MYERS et al., Appellees and Cross–Appellants,

v.

WILD WILDERNESS RACEWAY, L.L.C. et al., Appellants and Cross–Appellees.

[Cite as *Myers v. Wild Wilderness Raceway, L.L.C.,*
181 Ohio App.3d 221, 2009-Ohio-874.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 08CA3.

Decided Feb. 18, 2009.

Critchfield, Critchfield & Johnston, Ltd., John H. Schaeffer, and J. Douglas Drushal, for appellees and cross-appellants.

Calfee, Halter & Griswold, L.L.P., Albert J. Lucas, and Flite H. Freimann, for appellants and cross-appellees.

Per Curiam.

{¶ 1} This is an appeal from a Hocking County Common Pleas Court judgment that affirmed in part and denied in part a motion for a new trial filed by Wild Wilderness Raceway, L.L.C. and Anthony L. Kilbarger, Marie Kilbarger, Edward Kilbarger, and Marjorie Ann Kilbarger, defendants below and appellants herein, on claims against them by 50 surrounding property owners and businesses, plaintiffs below and cross-appellants herein.

{¶ 2} The raceway and the Kilbargers raise the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR

The trial court erred in granting a permanent injunction where, as here, there was no objective proof that the raceway was the source of the noise about which appellees complained.

SECOND ASSIGNMENT OF ERROR

The trial court abused its discretion in granting a permanent injunction that is overbroad and not narrowly tailored.

{¶ 3} The surrounding property owners raise the following cross-assignments of error for review:

FIRST CROSS–ASSIGNMENT OF ERROR

The replacement visiting judge erred in reversing the decision of the trial judge to award damages and attorneys' fees to the appellees/cross-appellants, and such error constitutes an abuse of discretion.

SECOND CROSS–ASSIGNMENT OF ERROR

The replacement visiting judge erred in modifying the scope of the permanent injunction ordered by the trial judge, and such error constitutes an abuse of discretion.

{¶ 4} The Kilbargers own approximately 1,100 acres of land in the Hocking Hills area of Hocking County. As a younger man, Tony Kilbarger enjoyed racing motocross. His middle son, Levi, developed an interest in the sport as well. Tony constructed a race track on the family's property so that Levi could practice. That facility grew into what is now the raceway. The noise from the raceway, however, proved too much for the neighbors, and surrounding property owners contacted Tony Kilbarger to complain.

{¶ 5} Subsequently, 50 surrounding property owners and businesses commenced the instant action and alleged that the raceway is a private nuisance and, for some, constitutes a tortious interference with their businesses.[1] The property owners requested a permanent injunction to bar the further operation of the raceway, along with damages and attorney fees. The raceway and the Kilbargers denied liability.

{¶ 6} The matter came on for a lengthy trial over several days in September 2005. At trial, many of the surrounding property owners testified concerning the noise emanating from the raceway. Adjectives used to describe the noise ranged from "annoying" to "unbearable," depending on the proximity of the property owner to the raceway. In addition to the raceway noise, property owners also cited the lights used to illuminate the track, as well as the dust caused by both the motorcycles and construction equipment. Those who operated rental businesses in the Hocking Hills also alluded to fewer guests using their rentals. Additionally, all the complaining witnesses testified about declining property values as a result of the noise.

---

1.  Some of the surrounding property owners lease cabins to vacationers. The owners asserted that their business declined due to the noise, dust, and other problems associated with the raceway.

{¶ 7} Tony Kilbarger testified that motocross races rarely went beyond 10:30 p.m. and that he expended considerable time and expense to keep the dust at a minimum. His wife, Marie, testified that the number of races held at the raceway was diminishing each year. She also stated that she and her husband operated the raceway at a significant loss and that they eventually wanted to build a home at that location.[2] Ed Kilbarger, Tony's father, testified that complaints about the raceway were exaggerated. Insofar as diminution of property values were concerned, Ed Kilbarger asserted that he would be the first to complain if land values suffered because of his extensive property ownership in the area. Ed Kilbarger went on to explain that rather than losing value, surrounding property values in Hocking County are on the rise.[3]

{¶ 8} At the conclusion of the trial, the trial court ruled that the raceway is a nuisance, that it interfered with the surrounding property owners, and that those owners are entitled to compensatory damages. The October 5, 2005 judgment imposed a permanent injunction under the following conditions:

Defendants shall not operate or permit the operation of any commercial motocross activity on the land in question, currently operated as Wild Wilderness Raceway. In addition, the Defendants shall not operate or permit the operation of any commercial motocross activity on any land owned by or leased to the Defendants, individually or collectively, within a five-mile radius of the home of any of the named Plaintiffs. The only "motocross activity" (any motorized vehicle, including motorbikes, ATVs, four-wheelers, etc.) that shall be permissible on any land within the five-mile radius stated above is personal used by [the Kilbarger family] alone. Said use shall be limited as follows: (1) no more than a cumulative total of 8 hours per week for any and/or all of the [family]; (2) any activity shall occur between the hours of 12:00 noon and 4:00 p.m. Eastern time; (3) any activity shall occur only on Tuesdays and Thursdays, previously the normal practice days for the track; (4) no activity shall occur on a legal holiday during the week, or on any weekend day; (5) Defendants will only operate any heavy equipment, such as bulldozers, graders and other construction equipment, for repair of the track during the same 12:00 noon to 4:00 p.m. Eastern Time period on Tuesdays and Thursdays; and, (6) there shall be no use of a public address system or lighting system at the former track.

---

2. Marie Kilbarger explained that she and her husband each owned 50 percent of the corporate stock in the raceway, but the land on which the raceway sat was leased from her father-in-law, Ed Kilbarger.

3. The witness categorically denied that he hoped to purchase additional land surrounding the raceway as the noise from that operation drove surrounding property owners to sell at distressed prices.

The trial court also ruled that the surrounding property owners were entitled to monetary damages and attorney fees, both to be determined at a later date.

{¶ 9} At that point, the procedural posture of this case becomes very convoluted. The Kilbargers filed many posttrial motions that requested the court to modify the injunction's scope and to vacate the damages and attorney-fee award. On June 16, 2006, the trial court vacated its previous determination that the surrounding property owners are entitled to damages. The court, however, reaffirmed their entitlement to attorney fees, which again were to be determined at a later date. A week later, the court filed another entry and awarded the surrounding property owners $64,500 in damages.

{¶ 10} On April 20, 2007, a new judge was assigned to finish the proceedings in this case. The new judge revisited the motion to modify the scope of the injunction and on October 19, 2007, issued an entry that modified the restrictions placed on the raceway:

1. All restriction in the Injunction on the personal use of the "large track" are hereby lifted, except that no more than two motocross vehicles shall be in operation on the large track at any time. The restrictions on the commercial use of the "large track" shall remain in full force and effect.

2. The restriction on the personal use of the "short track" is hereby modified to allow the Kilbarger family to operate one motocross vehicle at a time on the "short track" during the hours from 9 A.M. to sunset on weekdays. Notwithstanding the foregoing, no motocross activity shall be conducted on the short track on weekends or holidays, and the restrictions on commercial motocross activity shall remain in full force and effect.

{¶ 11} On October 25, 2007, the Kilbargers requested a new trial.[4] On February 15, 2008, the trial court denied the motion insofar as the Kilbargers sought to further modify or vacate the permanent injunction. The court, however, sustained the motion regarding the damages and the undetermined attorney-fees award. Thus, the court vacated both of those awards. This appeal followed.

I

{¶ 12} In their first assignment of error, the Kilbargers assert that any injunction in this case is unwarranted because there "was no objective proof the

---

4. A motion for new trial must be served within 14 days after entry of judgment. Civ.R. 59(B). Although the Kilbargers served their motion within seven days of the modification of the injunction, it was filed more than a year after the original judgment they sought to vacate. The Kilbargers and the raceway could have, presumably, grounded their motion on Civ.R. 63(B) and argued that the successor judge could not fulfill his duties without a new trial, but their motion explicitly cites Civ.R. 59, for which they are clearly beyond rule. In any event, this issue has not been raised on appeal, and thus, we disregard it for purposes of our analysis.

raceway was the source of the noise" about which the surrounding property owners testified. We disagree.

{¶ 13} Our analysis begins from the well-settled proposition that judgments supported by some competent and credible evidence will not be reversed on appeal as being against the manifest weight of the evidence. *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. This standard of review is highly deferential, and even "some" evidence is sufficient to support a court's judgment and to prevent a reversal. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989; *Willman v. Cole*, Adams App. No. 01CA725, 2002-Ohio-3596, 2002 WL 1560888, ¶ 24.[5]

{¶ 14} The evidence adduced at trial reveals that several motocross tracks and raceways are located in the area, and the Kilbargers argued that the noise about which the property owners complained emanated from one of those other tracks. However, Susan Miller, Richard Webb, John Schall, Tonya Myers, Dennis Schorr, and Marcia Myers, among others, emphatically testified that the noise that they complained of emanated from this particular location. Their testimony is more than sufficient for the trial court to have reached its conclusion.

{¶ 15} The Kilbargers counter that the property owners failed to provide "expert" and "objective" proof that the noise actually came from their property. Although we do not discount the possibility that an expert witness may be needed in some circumstances to pinpoint the source of a particular noise, we are not persuaded this is one of those circumstances. No evidence established that any of the other area motocross venues held races the same evenings as the Kilbarger events. Further, the opinion of a lay witness need only be "rationally based on the perception of the witness." Evid.R. 701. One need not be an expert to testify about the direction from which a loud noise can be heard. That is particularly true when some of the noise came from the raceway public-address

---

5. As we discuss infra, the decision to grant the equitable remedy of injunction rests in the sound discretion of the trial court. See *Garono v. Ohio* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496. The trial court also has discretion as to the terms to be included in that remedy. See *D & J Co. v. Stuart* (2001), 146 Ohio App.3d 67, 80, 765 N.E.2d 368; *Restivo v. Fifth Third Bank of Northwestern Ohio, N.A.* (1996), 113 Ohio App.3d 516, 520, 681 N.E.2d 484. Appellate courts review those decisions under an abuse-of-discretion standard. See e.g. *Neal v. Regina Manor*, Lucas App. No. L-07-1055, 2008-Ohio-257, 2008 WL 203648, at ¶ 12; *Rankin v. Underwood*, Wood App. No. WD-05-56, 2006-Ohio-1237, 2006 WL 665079, at ¶ 20. Although the Kilbargers' first assignment of error is couched in terms of the remedy, it actually challenges the trial court's disposition of the private-nuisance claim. Specifically, the Kilbargers argue that the trial court erred in determining that the raceway was the source of the noise that constituted such nuisance. Because this is a factual determination, rather than a discretionary decision, we must apply a weight-of-the-evidence standard rather than an abuse-of-discretion standard to matters of evidentiary weight and witness credibility.

system, which, apparently, pinpointed the source of the noise. It is also worth noting that noise is only a portion of the nuisance complaint. Surrounding property owners also complained about the dust and bright lights that came from the raceway. We believe that a layperson should be able to pinpoint the source of the bright lights. Moreover, Jane Schorr testified about campers going to and from the raceway and making "U turns" in her yard. Schorr lives next door to the raceway. This evidence further buttresses the assertion that the noise emanated from Wild Wilderness raceway, not an event several miles away.

{¶ 16} As to the property owners' lack of "objectivity," this argument involves the weight and credibility of their testimony. These are issues for the trier of fact to resolve. *Cole v. Complete Auto Transit, Inc.* (1997), 119 Ohio App.3d 771, 777–778, 696 N.E.2d 289; *Jacobs v. Jacobs,* Scioto App. No. 02CA2846, 2003-Ohio-3466, 2003 WL 21500026, at ¶ 31. The rationale for deferring to the trier of fact on issues of witness credibility and evidence weight is that the trier of fact is best situated to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh credibility. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The trier of fact may choose to believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591.

{¶ 17} What the Kilbargers appear to object to is the trial court's decision to accept the testimony of surrounding property owners as to the source of the noise rather than their argument that the noise could have come from somewhere else. This determination, however, is a matter entrusted to the trier of fact. We will not reverse the trial court's decision in view of the fact that the court was in the best position to see and to observe the surrounding property owners who emphatically affirmed that the noise came from the raceway.

{¶ 18} The Kilbargers also argue that the surrounding property owners failed to prove that the raceway noise rose to the level of a nuisance. This argument, however, is not the one actually advanced in the assignment of error, and we would be within our authority to disregard it. See App.R. 12(A)(1)(b). Instead, in the interests of justice, we will consider the issue.[6] As this argument is similar to the question of the source of the noise, we do not believe that expert testimony was necessary to establish that the volume of the noise rose to the level of a nuisance. Those who suffered as a result of the nuisance were competent to

---

6. App.R. 12(A)(1)(b) provides that courts of appeals shall determine appeals based, inter alia, on the assignments of error rather than on the arguments advanced in support of the assignments of error.

testify as to how that noise affected their lives. Twenty of the 50 surrounding property owners and businesses who brought this action did just that. The noise volume was characterized as sounding like anything from a swarm of bees inside one's head to "a bunch of chainsaws maybe 150 feet away." Dennis Schorr no longer enjoyed his "shop" where he performed restoration work. Richard Webb complained that the noise at his greenhouse is so loud that he cannot hear the music he pipes in to attempt to drown out the noise. Notwithstanding Tony Kilbarger's assertion that the motocross races rarely go beyond 10:30 p.m., Gwendolyn Corbett, among others, testified that races went on much later. Jane Schorr explained that even after the races ended for the night, bulldozers then worked for several hours to rebuild the track. Marilyn Schall testified that she heard bulldozers working at the raceway as late as 3:00 or 4:00 a.m. on occasion. Patricia Saniga cannot sleep at night unless she turns on her television to drown out racetrack noise.

{¶ 19} As much as the noise interferes with life inside their homes and businesses, virtually all of the surrounding property owners made clear that the noise virtually ended their outdoor activities. John Schall and Joy Wentz related that they simply can no longer engage in outdoor activities. Tonya Myers stated that she no longer has barbecues at her home. Many testified that they can no longer sit on porches, while others related that they try to be away from the area on nights when races are held. This is the kind of evidence that no expert witness can convey and is, in fact, sufficient to prove to the trier of fact that the raceway is a private nuisance.

{¶ 20} We recognize that the surrounding property owners also adduced expert evidence. Dennis Huff, Chief of the Acoustics Branch at NASA Glen Research Center, testified that he conducted tests, over several days, at the homes of surrounding property owners when the raceway was in operation. Huff related that normal levels of conversation are usually conducted in the range of 55 to 65 decibels. The test results from the various properties around the raceway were typically in the 60 to 70 decibel range. At the Wells residence, across the street from the raceway, test results were in the 75 to 85 decibel range.

{¶ 21} Eric Zwerling, Director of the "Technical Noise Center" at Rutgers University, provided some context for those test results. The witness opined that these levels are sufficient to (1) be disruptive of speech patterns at these residences, (2) be heard inside the homes of the surrounding property owners, and (3) cause a stress-related condition referred to as "learned helplessness syndrome." Zwerling also confirmed that noise above 35 decibels is sufficient to wake people from sleep.

{¶ 22} We also recognize and acknowledge that the Kilbargers presented expert testimony that contradicted the expert opinions of Huff and Zwerling.

We also acknowledge that Huff was unaware of other motocross venues in the vicinity when he conducted his tests. However, those issues go to the credibility and weight of the evidence, which, as noted above, are matters for the trier of fact to consider. Obviously, the trial court placed more reliance on the testimony of the surrounding property owners and their experts than on that of the Kilbargers and their experts. Again, this is well within the trial court's province and provides no basis for us to reverse the modified permanent injunction.

{¶ 23} For all of the foregoing reasons, we conclude that the first assignment of error is without merit and it is hereby overruled.

## II

{¶ 24} The Kilbargers assert in their second assignment of error that the scope of the modified injunction remains "overbroad and not narrowly tailored." Again, we disagree.

{¶ 25} Trial courts retain broad discretion to fashion the terms of an injunction. *D & J Co. v. Stuart*, 146 Ohio App.3d at 80, 765 N.E.2d 368; *Restivo v. Fifth Third Bank of Northwestern Ohio, N.A.*, 113 Ohio App.3d at 520, 681 N.E.2d 484; *Cullen v. Milligan* (1992), 79 Ohio App.3d 138, 141, 606 N.E.2d 1061. Accordingly, to obtain a reversal of such an order, the Kilbargers must demonstrate that the trial court abused its discretion in fashioning the terms of the injunction. See *Consun Food Industries, Inc. v. Fowkes* (1991) 81 Ohio App.3d 63, 69, 610 N.E.2d 463; *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 111, 583 N.E.2d 443. This is a difficult standard to satisfy.

{¶ 26} Generally, an abuse of discretion is much more than an error of law or judgment; rather, it implies that a trial court's attitude is unreasonable, arbitrary, or unconscionable. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242. When applying the abuse-of-discretion standard, appellate courts must not substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181. Indeed, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. See *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1; *Adams v. Adams*, Washington App. No. 05CA63, 2006-Ohio-2897, 2006 WL 1570297, at ¶ 6.

{¶ 27} The Kilbargers argue that the permanent injunction is overbroad because it shuts down their raceway business altogether. They contend that the

trial court should have crafted the injunction more narrowly to either limit the number of races they hold or the hours of operation. We are not persuaded.

{¶ 28} Private property rights are part of the very foundation of free, republican government. See *Campbell v. Georgia* (1852), 11 Ga. 353, 372; *People v. Collins* (1854), 3 Mich. 343, 396. In a perfect world, all property owners would exercise their rights in a way so as not to infringe on the rights of any other property owners. Unfortunately, a perfect world does not exist. Thus, equity jurisprudence is occasionally called upon to intervene when someone exercises property rights in a way that interferes with the rights of others. However, equity requires that any injunction be narrowly tailored to prohibit only complained-of activities. *Eastwood Mall, Inc. v. Slanco* (1994) 68 Ohio St.3d 221, 224, 626 N.E.2d 59; *Sharon Twp. Bd. of Trustees v. Crutchfield,* Medina App. No. 3286–M, 2002-Ohio-4747, 2002 WL 31015601, at ¶ 23.

{¶ 29} In the case sub judice, the complained-of activity is the operation of a motocross raceway. Abundant testimony established that the operation of the raceway destroyed the peace and tranquility for which the Hocking Hills area is known and renders the surrounding property owners incapable of enjoying their own land. The solution to this problem, though unfortunate, is clear. A permanent injunction that bars the commercial operation of the raceway is the appropriate choice to restore balance in the area. We note that this alternative is the typical recourse in situations such as this. See, e.g., *Angerman v. Burick,* Wayne App. No. 02CA28, 2003-Ohio-1469, 2003 WL 1524505, at ¶ 18–23; see also *Parish of E. Feliciana v. Guidry* (La.App.2005), 923 So.2d 45; *McAfee MX v. Foster* (Feb. 7, 2008), Fort Worth App. Dist. No. 2–07–080–CV, 2008 WL 344575.

{¶ 30} We emphasize, however, that although the permanent injunction bars the operation of a commercial motocross raceway, it does not prohibit the Kilbarger family from using the land for personal racing. The original injunction included private use, but the modification expanded allowance for private use.

{¶ 31} Although no party to this litigation, as shown by the appeal and the cross-appeal, is satisfied with the solution, we are not persuaded that the trial court abused its discretion in balancing the equities and arriving at what appears to be the best answer to the problem. We also note that the harm inflicted from the injunction is not as severe as the Kilbargers represent. The uncontroverted evidence is that the family built the raceway for Levi's practice. That objective has been met. Both Tony Kilbarger and David Rowland, the Kilbargers' own witness, testified that Levi has since turned professional. In addition, the terms of the modified injunction do not prohibit his use of the track for practice. Rather, the injunction limits the time and circumstances under which it can be used. We also note that Marie Kilbarger testified that the raceway operated at a "significant loss." Thus, the permanent injunction benefits the Kilbargers finan-

cially and may, hopefully, hasten the day when they build a home on the property.

{¶ 32} Accordingly, based upon the foregoing reasons, we find no merit in the second assignment of error, and it is hereby overruled.

### III

{¶ 33} We now turn to the surrounding property owners' cross-assignments of error. Both address the new judge's modifications to the October 5, 2005 judgment. Before we turn to their merits, however, we pause to note that Civ.R. 63(B) allows for the appointment of a successor judge if a judge who has already heard a case, and rendered a verdict, is unable to complete his duties. The successor judge can finish the remaining matters in a case without conducting a new trial unless, however, the successor judge believes that "he cannot perform those duties." Id. Under this rule, a successor judge can exercise the same powers and has a right to act on every case as fully as her predecessor could have done. See *Witt v. Akron Express, Inc.*, 159 Ohio App.3d 164, 823 N.E.2d 473, 2004-Ohio-6837, 2004 WL 2913578, at ¶ 14; *Lance v. Slusher* (1944), 74 Ohio App. 361, 364, 29 O.O. 514, 59 N.E.2d 57. Thus, there is nothing infirm with the successor judge in the case at bar finalizing the case, even though he did not hear the matter at trial. Moreover, none of the modifications that the successor judge made to the October 5, 2005 judgment dealt with matters that depended on assessing the weight and credibility of testimony. Instead, the modifications involved the sufficiency of evidence or other legal issues that could be gleaned from a trial transcript without having observed the witnesses.

{¶ 34} Also, we note that the October 5, 2005 judgment did not, among other things, dispose of the request for attorney fees. This rendered the judgment neither final or appealable. See generally *Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 840, 623 N.E.2d 232; *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 623 N.E.2d 177; *State ex rel. VanMeter v. Lawrence Cty. Bd. of Commrs.* (Aug. 25, 1992), Lawrence App. No. 91CA25, 1992 WL 208960. Interlocutory judgments (judgments that are not final) are subject to revision at any time before final judgment is entered. See *Simkanin v. Simkanin*, Summit App. No. 22719, 2006-Ohio-762, 2006 WL 401312, at ¶ 7; *Yeater v. Bob Betson Ents.*, Belmont App. No. 04–BE–46, 2005-Ohio-6943, 2005 WL 3537684, at ¶ 10.[7] Because the

---

7. Civ.R. 54(B) expressly provides that a judgment adjudicating fewer than all of the claims, rights, or liabilities of the parties "is subject to revision at any time" before final judgment. That rule relates mostly to cases that involve multiple claims. As this court has pointed out repeatedly, attorney fees are a measure of damages that are not a separate claim in and of

attorney-fee issue was not resolved until the February 15, 2008 judgment on the Kilbargers' motion for new trial, all previous orders were subject to revision, including the injunction and the damages and attorney-fee award. With these principles in mind, we turn our attention to the merits of the cross-assignments of error.

## IV

{¶ 35} The surrounding property owners assert in their first cross-assignment of error that the successor judge erred in reversing the original award of damages and attorney fees. We disagree.

{¶ 36} The surrounding property owners' complaint sought damages for three types of injuries: (1) interference with the enjoyment of their land, (2) decreased business from tourists renting cabins in the area, and (3) diminished values of their property as a result of the operation of the raceway. Because the commercial operations of the raceway have been eliminated pursuant to the modified permanent injunction, the latter category of damages is no longer an issue. In other words, because the raceway is no longer in operation, it will not diminish the surrounding property values.

{¶ 37} The next question is whether the successor judge erred in reversing the damage award for the loss of business and enjoyment of the land during the course of the private nuisance. For the reasons that follow, we answer this question in the negative.

{¶ 38} In a February 4, 2008 memorandum decision, the successor judge vacated the damages because he found that the surrounding property owners had not proven their damages with "reasonable certainty" and that the damage award was made to all 50 owners as a group when fewer than half of the owners testified at trial. This latter point standing alone is sufficient to vacate the award. If parties do not testify as to the damages they suffered, they should not recover damages.

{¶ 39} We also point out that although finding a private nuisance allows for the recovery of damages for annoyance caused by the nuisance, an award of damages does not "inevitably follow" the finding of a nuisance. *Blevins v. Sorrell* (1990), 68 Ohio App.3d 665, 669, 589 N.E.2d 438; *Bullock v. Oles* (Sept. 24, 2001), Mahoning App. No. 99CA223, 2001 WL 1199858. The issue of damages is relegated to the discretion of the trier of fact, and its decision will not be reversed

---

themselves, but rather a remedy for other claims. See *Britton v. Gibbs Assoc.*, Highland App. No. 06CA34, 2008-Ohio-210, 2008 WL 187530 at ¶ 11–12; *West v. Stump*, Meigs App. No. 07CA5, 2007-Ohio-6495, 2007 WL 4260164, at ¶ 12.

absent an abuse of that discretion. *Blevins*, 68 Ohio App.3d at 669, 589 N.E.2d 438; *Price v. Parker* (Mar. 9, 2000), Franklin App. No. 99AP–298, 2000 WL 256176.[8]

{¶ 40} Although some members of this court may have exercised their discretion differently, we do not believe the trial court's decision on this matter is arbitrary, unreasonable, or unconscionable. As to the claim for tortious interference with business relationships (diminished income from rental businesses), we agree that the property owners' evidence was highly speculative.

{¶ 41} Bud Myers testified that customers at his bed and breakfast complained about the noise, but he introduced no evidence to show a decrease in business. Likewise, Phillip Myers and Michael Corbett lease cabins in the area, and although they related concerns expressed by some of their renters, they did not delineate a precise measurement of the economic damages they suffered, nor did they establish that any diminution in income was related to the raceway noise as opposed to other factors. Thus, we thus find no error in the trial court's decision not to award damages on that portion of the surrounding property owners' claim.

{¶ 42} The surrounding owners also object to the successor judge's reversal of damages for the loss of enjoyment of the property. They argue that the loss of use and enjoyment, like pain and suffering, does not lend itself to proof with "mathematical certainty." As an abstract proposition of law, we agree, but we do not believe that the successor judge actually used this standard.

{¶ 43} First, the judgment entry clearly states that the successor judge looked only for "reasonable certainty," not mathematical certainty, as the surrounding property owners suggest. Second, after our review of the lengthy trial transcript, we agree with the trial court that damages were not proven with "reasonable certainty." This is not to say that the nuisance did not injure the surrounding property owners. Because the Hocking Hills area is prized for its peace and tranquility, there is no doubt that the raceway deprived surrounding property owners of peace and quiet. Noise from the track was alternately described by Bud Myers as "terrorizing," by Marilyn Schall as "unbearable," by Jane Schorr as being "so loud that you cannot hear yourself think," and by Michael Corbett as making one feel like a "trapped animal." We also recognize that Jane Schorr endured campers going to and from the raceway turning around in her yard and causing dust on her property so thick that it settled inside her home. Robert Wells testified that the raceway caused muddy runoff in what was

---

8. The surrounding property owners incorrectly argue in their brief that the successor judge could not disturb the original judge's decision as to damages without making a "finding of passion or prejudice." As noted supra, until a final order was entered, the original judge's finding were interlocutory and could be amended at any time.

once a clear and pristine stream through his property and that the noise drove away wildlife that used to come onto his land.

{¶ 44} By the same token, Marcia Myers merely described the noise as "irritating," and Gwendolyn Miller characterized it as "obnoxious." Although we do not discount their complaints, this illustrates the problem of fashioning an award of monetary damages. Property owners close to the raceway, like Jane Schorr, suffered more than property owners who lived farther from the raceway. Moreover, damage to their use and enjoyment of the property was more episodic than permanent. We find nothing in the record to indicate that the raceway operated year round or interfered with the use and enjoyment of the property every day of the summer. Admittedly, the practices and races occurred four of seven days a week. That, however, left three days of the week, and the length of the racing season is somewhat unclear from the evidence. This is not intended to minimize the injury inflicted on surrounding property owners, but to illustrate the difficulty the trial court faced in fashioning an award of monetary damages. Because of these difficulties, we are not persuaded that the court acted arbitrarily, unreasonably, or unconscionably in ruling that damages were not proven with "reasonable certainty."

{¶ 45} Our conclusion on this point is buttressed by a similar situation that our Ninth District colleagues who reviewed a trial court decision that refused to award damages to neighbors of a motocross raceway. The court affirmed the holding, in part, because only a few pieces of testimony that concerned the dust and annoyance from the raceway were adduced at trial and this was insufficient to establish that the court erred in its decision. See *Angerman*, 2003-Ohio-1469, 2003 WL 1524505, at ¶ 35.

{¶ 46} Here, 20 of 50 plaintiffs in this case testified. Many, like Rita Preston, Dennis Schorr, John Schall, and Patricia Saniga, gave brief testimony that spans less than ten pages in a nearly 700–page transcript. While we take their complaints very seriously, we ultimately rule, as the Wayne County Court of Appeals did in *Angerman*, that this testimony is insufficient to persuade us that the trial court acted arbitrarily, unreasonably, or unconscionably.

{¶ 47} We also readily agree with the trial court's decision concerning attorney fees. Ohio follows the "American Rule" whereby each party to a lawsuit generally pays its own attorney fees. See *Jones v. McAlarney Pools, Spas & Billiards, Inc.*, Washington App. No. 07CA34, 2008-Ohio-1365, 2008 WL 757522, at ¶ 11; *J.B.H. Properties, Inc. v. N.E.S. Corp.*, Lake App. No. 2007–L–24, 2007-Ohio-7116, 2007 WL 4564392, at ¶ 8; *Bethel v. Haney*, Tuscarawas App. No. 2006AP110065, 2007-Ohio-6452, 2007 WL 4227407, at ¶ 22. There are exceptions to this rule, but only (1) when a statute allows it, (2) there is a finding of bad faith, or (3) a contractual provision exists for fee-shifting. *J.B.H. Properties*,

*Inc.,* 2007-Ohio-7116, 2007 WL 4564392, at ¶ 8; *Hagans v. Habitat Condominium Owners Assn.,* 166 Ohio App.3d 508, 851 N.E.2d 544, 2006-Ohio-1970, at ¶ 42; *Camp–Out, Inc. v. Adkins,* Wood App. No. WD–06–057, 2007-Ohio-3946, 2007 WL 2217056, at ¶ 28. None of the exceptions apply here. Thus, we find no error on the part of the trial court in vacating the previous award of attorney fees.

{¶ 48} For the reasons set forth above, we find no merit in the first cross-assignment of error, and it is hereby overruled.

## V

{¶ 49} In their second cross-assignment of error, the surrounding property owners assert that the successor judge erred by modifying the terms of the permanent injunction. Again, we disagree.

{¶ 50} The May 21, 2004 complaint asked for an injunction to prohibit the Kilbargers and the raceway "from operating a Racetrack facility on the Real Estate." This is precisely what they received. The October 5, 2005 injunction and the October 19, 2007 modified injunction both prohibit the operation of the raceway as a commercial entity. The surrounding property owners did not ask for an injunction to limit the Kilbargers' personal use of the tracks on the raceway facility.

{¶ 51} Although we realize that a nondefault judgment may grant even greater relief than complaining parties request in their demand for relief, see Civ.R. 54(C), we are not persuaded that the successor judge erred in modifying the terms of the injunction to permit Kilbarger family use. As noted previously, the specific language and terms of an injunction lie in the sound discretion of the trial court and will not be reversed absent a showing of an abuse of that discretion. *D & J Co.,* 146 Ohio App.3d at 80, 765 N.E.2d 368; *Restivo,* 113 Ohio App.3d at 520, 681 N.E.2d 484. Here, we are not persuaded that the trial court abused its discretion.

{¶ 52} Although some of the surrounding property owners testified that they became aware of noise from the raceway shortly after Tony Kilbarger constructed the track for his son's practice, the central objection of surrounding property owners involved the commercial aspect. Tony Kilbarger also testified that on a good night, the raceway had 110 to 125 riders. This is a far cry from the number of riders permitted pursuant to the modified injunction.

{¶ 53} We further emphasize that the Kilbarger family has as much right to the use and enjoyment of their property as the surrounding property owners have to their property. Occasional use of motor vehicles is to be expected in a rural area, and the trial transcript indicates that little objection arose concerning the occasional use of the raceway for Levi Kilbarger to practice. Should

occasional use by the Kilbarger family become oppressive, the surrounding property owners could pursue an action against the Kilbargers' personal use of the track.[9] In any event, for these reasons, we find no merit to the second cross-assignment of error, and it, too, is hereby overruled.

{¶ 54} Having reviewed all errors assigned and argued by appellants and cross-appellants in their briefs, and after finding merit in none, we hereby affirm the trial court's judgment.

Judgment affirmed.

ABELE and McFARLAND, JJ., concur.

KLINE, P.J., concurs in judgment only.

---

9. Because the surrounding property owners did not seek an injunction to bar the Kilbarger family from personal use of the vehicles on the property, that issue was not expressly tried below and is not barred from being raised in the future by the doctrine of res judicata.