[Cite as *Metzger v. Strongsville Care Group, L.L.C.*, 2025-Ohio-1732.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KAREN M. METZGER,                               :
ADMINISTRATRIX, ET AL.,

                                                :

      Plaintiffs-Appellants,

                                                :          No. 114290

      v.

                                                :

STRONGSVILLE CARE GROUP, LLC,
ET AL.,                                         :

                                                :

      Defendants-Appellees.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 15, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-981011

---

### *Appearances:*

The Mellino Law Firm LLC, Christopher M. Mellino, and
Calder C. Mellino, *for appellants*.

Reminger Co., L.P.A., Daniel C. Egger, and Brianna M.
Prislipsky, *for appellee*s.

MARY J. BOYLE, J.:

{¶ 1} In this appeal, plaintiffs-appellants Karen M. Metzger ("Karen"),

individually and as administratrix of the estate of John E. Metzger ("John"); Deana

Balogh ("Deana"); and Doreen E. Cannon ("Doreen") (collectively referred to as

"plaintiffs") argue that the trial court erred when it granted the renewed motion to stay proceedings and motion to compel enforcement of the alternative dispute resolution ("ADR") agreement filed by defendants-appellees Strongsville Care Group, LLC, dba Cardinal Court Alzheimer's Special Care Center; Sunshine Retirement Living, LLC; Kimberly Wilfong; Frederick Scott Kovach, LPN; Kimberly Fears, LPN; Jennifer Bella, LPN; Holly Soresso; Kailey Minachick; Penni Dunlap; Luis Serrano; Dick Glaunert; and James Matthews (collectively referred to as "defendants"). Defendants maintain that the parties were bound by a proper and valid arbitration agreement and that the trial court's decision to stay the proceedings and compel arbitration was proper. We are now asked to determine whether the trial court erred in granting defendants' motion compelling enforcement of the ADR agreement. For the reasons set forth below, we reverse the trial court's judgment and remand for a new hearing on defendants' motion.

## I. Facts and Procedural History

{¶ 2} On June 13, 2022, Karen, John's wife, completed paperwork on John's behalf admitting him to Cardinal Court Alzheimer's Special Care Center ("Cardinal Court"), a residential care and memory care facility in Strongsville, Ohio. John was in the hospital at that time and was transferred to Cardinal Court on June 14, 2022. The next day, less than 24 hours into his stay at Cardinal Court, a family member came to visit John and was unable to find him. When the family member tried to open the door to his room, the door was locked. After locating a Cardinal Court employee to unlock the door, the family member found John face

down on the bathroom floor in a pool of blood.  No one knew how long he had been there.  John was taken by ambulance to the hospital where he passed away two days later.  Plaintiffs, through counsel, attempted to negotiate a settlement with Cardinal Court.  According to plaintiffs, during these negotiations, Cardinal Court never mentioned that there was an ADR agreement.  The parties were unable to resolve the matter and, as a result, plaintiffs initiated a lawsuit against the defendants in June 2023.[1]

{¶ 3}  In their complaint, Karen, and Deana and Doreen, John and Karen's daughters, brought a survivorship claim and a wrongful-death claim.  In their survivorship claim, Karen, as the administratrix of John's estate, alleges that Cardinal Center was negligent in their treatment of John while he was under their care and as a "direct and proximate result of the negligence of all Defendants, [John] fell while unmonitored, unattended, and locked in his room causing him to sustain blunt force trauma to his head on June 15, 2022 and death."  (Plaintiffs' amended complaint, June 15, 2023.)  Plaintiffs allege that John suffered "permanent and substantial injuries, loss of bodily organ systems, was no longer able to independently perform life sustaining functions, endured agonal pain and suffering prior to his death on June 17, 2022."  (Plaintiffs' amended complaint, June 15, 2023.) Plaintiffs further allege that Karen, Deana, and Doreen sustained "pecuniary injury . . ., including loss of companionship, consortium, care, assistance, attention,

---

[1] Plaintiffs filed their initial complaint against the defendants on June 14, 2023, and an amended complaint the next day.

protection, advice, guidance, counsel, instruction, training and education; loss of support from the reasonable expected earning capacity of decedent; loss of certain prospective inheritance as a result of the untimely death of the decedent; and all have suffered severe mental anguish as a result of the death of their husband and father." (Plaintiffs' amended complaint, June 15, 2023.) Plaintiffs also allege that they attempted to engage in presuit settlement negotiations and that defendants chose not to engage in a conversation regarding resolution.

{¶ 4} In response, defendants filed their answer to plaintiffs' complaint on August 11, 2023. While one of defendants' affirmative defenses asserted that a binding arbitration agreement governed the dispute, defendants did not include a copy of the agreement with their answer. Thirteen days later, on August 24, 2023, defendants filed an amended answer, wherein they again asserted that a binding arbitration agreement governed the dispute but also included a copy of the agreement as an exhibit.

{¶ 5} Then, four days later, defendants filed a motion to stay proceedings and compel mediation and arbitration. Defendants argued that, prior to John's admission to Cardinal Court, Karen, on John's behalf, entered into an alternative dispute resolution agreement ("Agreement") with Cardinal Court. According to this Agreement, "[a]ll claims or disputes arising out of or in any way relating to the admission agreement, the health care services and other services provided to the Resident by the Facility, (referred to in this Agreement individually as a 'Claim' and collectively as 'Claims') shall be resolved first by Mediation and thereafter if

necessary by binding Arbitration as provided in this Agreement." (Agreement, p. 1.) Plaintiffs opposed the motion, arguing that (1) the Agreement applies only to the survivorship claim and not to any other claims or any other defendants; (2) the defendants have waived all rights under the alleged agreement by failing to assert it timely; (3) the time to demand arbitration of the claims in this case has expired; and (4) the Agreement is not valid because Defendants have no evidence that it was validly executed. In support of their brief in opposition, plaintiffs included an affidavit from Karen, wherein she stated:

5.  That is not my handwritten signature on the [Agreement].

6.  I do not recall ever seeing this document.

7.  I do not recall ever reviewing this document.

8.  I do not recall having this document explained to me.

9.  I do not recall signing this document.

10.  I have no record of this document, in paper or electronic form.

11.  I have no record of signing this document.

12.  I do not recall signing any documents for Cardinal Court electronically.

13.  I am not aware of any authority to waive my husband's constitutional rights to a trial by jury and open courts.

14.  I have never had any intent to waive either my husband's nor my constitutional rights to a trial by jury and open courts.

(Karen's affidavit, Sept. 11, 2023.)

{¶ 6} An affidavit from Doreen was also attached, wherein she similarly stated that she did not recall her mother signing the arbitration agreement. Doreen stated:

> 2. On June 13, 2022, my mother only signed documents for my father's admission to Cardinal Court in pen and ink, not electronically.
>
> 3. To the best of my knowledge, my mother only ever signed documents in person and in writing for Cardinal Court. I am not aware of my mother ever signing anything electronically for my father's admission to Cardinal Court.

(Doreen's affidavit, Sept. 11, 2023.)

{¶ 7} In defendants' reply brief, they provided an affidavit of Kimberly Wilfong ("Wilfong"), the Executive Director of Cardinal Court, who stated that she provided Karen with "a physical copy of the [Agreement], which [Karen] reviewed and signed digitally using a DocuSign signature, which [Wilfong] personally witnessed." (Wilfong affidavit, Sept. 15, 2023.) Also included was a report Wilfing received from DocuSign, which she stated confirms the time and date that Karen digitally signed the Agreement. Defendants also provided copies of John's health care power of attorney and general durable power of attorney agreements.

{¶ 8} Plaintiffs filed a surreply to defendants' reply. In their surreply, plaintiffs argued that defendants attached new documents to their reply that had never been produced to plaintiffs. Furthermore, plaintiffs argued that "it makes no sense that defendant's employee would present [Karen] with a hard copy of documents and have her sign all of them in ink, except this particular one. Defendant has still not explained why, or where, or how this document was signed.

At best, it shows defendant's employee signed it three times from her own email account." (Plaintiffs' surreply, Sept. 18, 2023.)

{¶ 9} On November 21, 2023, the trial court held an evidentiary hearing on defendants' motion to stay proceedings and compel mediation and arbitration. The following evidence was adduced at the hearing.

{¶ 10} Cardinal Court called Wilfong as its only witness. Wilfong testified that some of her responsibilities as executive director of Cardinal Court include signing documents with the family upon admission. According to Wilfong, she met with Karen and one of her daughters on June 13, 2022, to review and sign documents necessary for John's admission into Cardinal Court. They met in the conference room where she sits down with the family. At these meetings, Wilfong "will have a hard copy of the arbitration agreement, the resident agreement for them to review, since it is DocuSign, and then we have additional documents that they will sign in person, consent forms and things that are required." (Tr. 7-8.)

{¶ 11} Wilfong testified that she usually reviews copies of the incoming resident's durable power of attorney and healthcare power of attorney as well as medical paperwork prior to meeting with the family. Wilfong testified that it is Cardinal Court's general policy for her to "offer the family the document hard copy for them to review because it does have to be signed via DocuSign, and at that time we will usually sign the additional paperwork that is in person, and then [she] will bring [her] laptop over and have the representative go through and do the document through the DocuSign." (Tr. 9.) According to Wilfong, it was her understanding

that Karen had the authority to sign on John's behalf because she received a "durable power of attorney and healthcare power of attorney document, and [Karen] is listed first as the power of attorney . . . and we had her sign because [John] has dementia." (Tr. 11-12.) Wilfong further testified that the DocuSign report indicates that she sent the invitation, which was then "opened by [Karen]. It was reviewed in person by [Karen], and it was signed by [Karen]." (Tr. 11.) When asked on direct examination if it is "your testimony here today that [Karen] executed the [ADR] Agreement on June 13th, 2022, via DocuSign," Wilfong replied, "Yes, it is." (Tr. 13.)

{¶ 12} On cross-examination, Wilfong testified that Karen did not actually sign the ADR agreement, but rather signed the document electronically through DocuSign by pressing a button on her laptop. According to Wilfong, the Agreement "is in a green binder, and it is given to every family so they can sit down and review it." (Tr. 26.) Wilfong acknowledged that the IP address for Karen's electronic signature came from her laptop and her IP address and not Karen's IP address. Wilfong explained that it came from her IP address because Karen "signed it in person with [her.]" (Tr. 15.) Wilfong testified that she did not "remember much of anything else about that day," other than remembering that Karen electronically signed the Agreement. (Tr. 17.) Wilfong testified that she entered Karen's name and the admission date into DocuSign, but acknowledged that if she pressed the button, the audit trail would still indicate that Karen signed the document. Wilfong further acknowledged that the DocuSign audit trail indicates that John also electronically signed documents at her IP address at her meeting with Karen and her daughter,

but John was not present during the signing. John was admitted to Cardinal Court from the hospital, and Wilfong could not recall if he moved in on June 13, 2023, or the day after.

{¶ 13} Wilfong further testified on cross-examination that the Agreement "is not a condition of admission, but it is part of the contract. If they choose not to sign, it would be removed." (Tr. 23.) Wilfong acknowledged that she received a letter from Michael Czack ("Czack"), an attorney on behalf of the plaintiffs, in January 2023 informing her that the plaintiffs were bringing a claim against Cardinal Court. Her response to that letter was handled through the home office. She did not personally provide the executed Agreement to Cardinal Court's risk management team. She did give her lawyer the agreement, but could not recall when she did. When asked by the court, Wilfong acknowledged that Karen did not sign the physical copy of the Agreement that she reviewed.

{¶ 14} Plaintiffs first called Czack, who testified that he submitted a claim against Cardinal Court in November 2022. He sent a letter to Cardinal Court requesting John's file. He testified that Wilfong responded to him in November and "she sent [him] supposedly all of [John's] file." (Tr. 34.) According to Czack, the initial documents Wilfong sent him did not include the Agreement. Cardinal Court's attorney reached out to him in January 2023. Cardinal Court's attorney never informed him of an ADR agreement during their communications.

{¶ 15} Karen testified that the signature on the Agreement was not hers. When asked if she signed anything electronically at Cardinal Court, Karen replied,

"I don't believe so." (Tr. 41.) On cross-examination, Karen testified that her daughter, Doreen, was also in the room with her and Wilfong when she reviewed the documents.

{¶ 16} Doreen testified that she was with Karen and Wilfong while Karen was signing the documents. John was at the hospital the day they met with Wilfong. Doreen further testified that Karen signed all the documents by "[p]en and ink." (Tr. 45.) She was at the meeting the entire time and did not observe her mother sign anything electronically. Doreen further testified that the signature on the last page of the Agreement was not her mother's.

{¶ 17} Following the hearing and prior to the trial court issuing a decision, the trial judge was replaced by another judge in February 2024. Subsequent to this new appointment, in March 2024, plaintiffs voluntarily dismissed their survivorship claim under Civ.R. 41(A), without prejudice, in order to avoid arbitration, which would not attach to plaintiffs' wrongful-death claim. Defendants opposed this voluntarily dismissal, arguing that plaintiffs had to amend their complaint in order to remove the survivorship and that a dismissal without prejudice was improper. The court denied defendants' motion to stay and compel as moot in light of plaintiffs' voluntary dismissal on their survivorship claim. Because plaintiffs' notice dismissed some but not all of their claims, defendants then filed a motion for reconsideration in March 2024, arguing that plaintiffs' notice did not effectuate a proper dismissal of their survivorship claim, which could only be done by amending their complaint

and removing the dismissed claims.  Plaintiffs opposed this motion, claiming that defendants' objections were without merit.

{¶ 18} According to the docket, a third judge was assigned to oversee these proceedings in June 2024.  At that time, this successor judge ruled on defendants' motion for reconsideration.  The successor judge granted the motion in part, finding that the "proper procedure for a plaintiff to dismiss fewer than all claims against a single defendant is to amend the complaint pursuant to Civ.R. 15 (A)."  (Journal entry, June 14, 2024.)  The court granted plaintiffs 30 days to amend their complaint.  Plaintiffs did not file an amended complaint, and after the 30 day-window passed, defendants renewed their motion to stay the proceedings and compel arbitration on July 22, 2024.  Ten days later, and before plaintiffs could file a timely response, the court granted the motion.  The court stated:

> The court has reviewed the briefs, as well as the transcript of the full hearing held before Judge . . . on November 21, 2023.  The court finds that the testimony of the Executive Director of Cardinal Court Alzheimer's Care Center, Kimberly Wilfong, processed the admittance of decedent John E. Metzger according to the regular scope and procedure of the care facility.  While the testimony of Plaintiff and Plaintiff's daughter indicates they did not recall the signing of the arbitration provision, there was no testimony elicited that Ms. Wilfong made any misrepresentations regarding the arbitration provision, nor was there testimony to establish that the signing of the document was induced in a fraudulent manner.  Moreover, the testimony and a review of the provision indicates that signing the ADR provision was not a condition precedent to admittance to the facility.  Accordingly, the court finds that the motion to stay is well-taken and granted.  The motion to compel arbitration with respect to the survivorship claim is well-taken and granted.

(Journal entry, Aug. 1, 2024.)

{¶ 19} It is from this order that plaintiffs now appeal, raising the following two assignments of error for review:

> **Assignment of Error I:** The trial court erred procedurally where a successor judge rendered judgment based upon a transcript of a prior proceeding he did not witness and where witness credibility is a factor, instead of holding his own hearing.

> **Assignment of Error II:** The trial court erred substantively by enforcing an invalid contract that will create piecemeal litigation that wastes judicial time and resources.

## II. Law and Analysis

{¶ 20} Within both assigned errors, plaintiffs challenge the court's ruling on defendants' motion to compel arbitration, arguing that (1) it was error for the successor judge to grant defendants' motion to compel arbitration because the successor judge did not preside over the arbitration hearing and credibility was at issue, and (2) the arbitration clause is invalid.

### A. Successor Judge Rendering Judgment on a Transcript

{¶ 21} In the first assignment of error, plaintiffs contend that it was error for the court to grant defendants' renewed motion to stay proceedings and motion to compel enforcement of the Agreement when the successor judge did not hear the evidence at the motion hearing but, instead, based the decision on a consideration of the hearing transcript. Relying on *Vergon v. Vergon,* 87 Ohio App.3d 639 (8th Dist. 1993), and the cases cited therein, plaintiffs maintain that "it is reversible error for a successor judge to make findings of fact and conclusions of law based solely upon the transcript of live testimony they did not witness." (Appellant's brief, p. 8.) As a result, plaintiffs request that "[a]t a minimum, the successor judge must hold a

new hearing on this matter in order to personally assess the credibility of the witnesses before making determinations of fact pursuant to *Vergon* and its progeny." (Appellant's brief, p. 9.)

{¶ 22} In *Vergon*, a trial was held in divorce proceedings on the same day the trial judge retired. The judge signed and journalized an opinion after his retirement date. Thereafter, a successor judge signed a journal entry and granted the divorce. This journal entry adopted verbatim the wife's proposed findings of fact and conclusions of law. Husband appealed from this entry and argued that the successor judge did not have jurisdiction to grant the divorce and that judgment was void.

{¶ 23} This court held that the predecessor trial judge's opinion was void because once his term expired he was without authority to act. *Id.* We found that the successor judge's judgment was void because credibility was a vital factor in rendering judgment and the "record is full of conflicting testimony which would be difficult to evaluate absent observation of the witnesses." *Id.* Relying on *Welsh v. Brown-Graves Lumber Co.*, 58 Ohio App.2d 49 (9th Dist. 1978), and *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287 (10th Dist. 1990), we stated "[t]he successor judge cannot render a judgment on the transcript when witness credibility is a factor. Credibility determinations require the trier of fact to observe the testimony." *Vergon* at 643.

{¶ 24} In *Welsh*, the Ninth District Court of Appeals held that a successor judge could not render judgment if the judge's predecessor had not filed findings of

fact and conclusions of law.  The successor judge cannot render a judgment on the trial transcript when witness credibility is a factor and the case was not one in which credibility of witnesses was not a factor.  *Id.* at the syllabus.  The *Welsh* Court stated:

> The clear implication of part (B) [of Civ.R. 63] is, that when the trial judge acts in the capacity of the trier-of-fact, a successor judge cannot take over the case if the predecessor judge has not filed findings of fact and conclusions of law.  This prohibition is clearest in a case such as this, where the predecessor judge has not rendered a judgment.  See Civ.R. 52.

*Id.* at 51.

{¶ 25} After discussing Ohio case law supporting this view, the *Welsh* Court noted that in the "rarely encountered" situation where witness credibility was not a factor before the trier of fact, it would not be an error for the successor judge to render judgment. *Id.*  In that situation, it is not troublesome that the successor judge did not observe the witnesses.  *Id.*, citing Annotation, *Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor*, 22 A.L.R.3d 922 (1968); *see also State v. McKinley*, 7 Ohio App.3d 255 (8th Dist. 1982) (applying Crim.R. 25, which is analogous Civ.R. 63).

{¶ 26} In *Arthur Young*, the Tenth District Court of Appeals addressed the issue of a successor judge rendering a judgment on a transcript involving witness credibility in the context of a contempt hearing.  The *Arthur Young* Court found that the principle of *Welsh*, 58 Ohio App.2d 49 (9th Dist. 1978), applied to the matter before it and concluded that "[w]hen credibility is involved, a fair hearing requires

the trier of fact to observe the testimony." *Arthur Young*, 68 Ohio App. at 295 (10th Dist. 1990). In reversing the trial court, the *Arthur Young* Court stated that "credibility issues were involved at the contempt proceeding. The trial court erred in adjudging defendant in contempt on the basis of the transcript." *Id.* at 298. *See also State v. Slagle*, 2012-Ohio-1575, ¶ 40 (2d Dist.) ("We conclude that a successor judge in a bench trial, absent the consent of the parties, may not render a verdict in a bench trial based solely upon a review of an audiovisual recording of the trial."); *Yurkowski v. Univ. of Cincinnati*, 2015-Ohio-1511, ¶ 14 (10th Dist.) (The trial court erred by entering judgment, on remand, based upon a review of the transcript of expert testimony from the prior medical malpractice trial where the parties did not stipulate to the same "because the successor judge's findings of fact and conclusions of law as to the question on remand depended on a determination of the credibility of the witnesses[.]"). *Compare Concord Twp. Bd. of Trustees v. Painesville*, 2004-Ohio-5461, ¶ 17 (11th Dist.) (no error for successor judge to enter judgment on remand without a hearing where "[w]itness credibility was not a central issue[.]"); *Kvinta v. Kvinta*, 2000 Ohio App. LEXIS 607 *8-9 (10th Dist. Feb. 22, 2000) (no error where "[c]redibility was not an issue"); *Myers v. Wild Wilderness Raceway, L.L.C.*, 2009-Ohio-874, ¶ 33 (4th Dist.) (no error where "none of the modifications that the successor judge made to the . . . judgment dealt with matters that depended on assessing the weight and credibility of testimony"); *Stychno v. Stychno*, 1998 Ohio App. LEXIS 3749 (11th Dist. Aug. 14, 1998) (no abuse of discretion in successor

judge failing to hold a new hearing where no "crucial issues of credibility" were involved).

{¶ 27} Defendants argue that *Vergon*, 87 Ohio App.3d 639 (8th Dist. 1993), is problematic because it involves a judgment rendered by a successor judge in a bench trial. Defendants further argue that the successor judge did not make a credibility determination; therefore, plaintiffs failed to demonstrate that "a successor judge abuses his discretion when he — upon proper review of a hearing transcript — issues a ruling on a pending motion without making determinations as to credibility." (Defendants' brief, p. 13.)

{¶ 28} Defendants' arguments are unpersuasive. We are compelled to conclude that the principles of *Vergon*, *Welsh*, and *Arthur Young* apply to the matter before us. Contrary to defendants' assertion, credibility is a vital factor in rendering judgment in the instant case. Indeed, the crux of the case is whether Karen electronically signed the Agreement. The transcript is full of conflicting testimony, which would be difficult to evaluate absent observation of the witnesses. Thus, a credibility determination is implicit within the analysis of whether Karen agreed to be bound by an ADR to resolve any claims.

{¶ 29} Here, Karen testified that she never received a copy of the Agreement, that was not her signature on the Agreement, and that she does not believe she signed anything electronically at Cardinal Court. Doreen testified that her mother signed all the documents by "[p]en and ink." (Tr. 45.) She was at the meeting the entire time and did not observe her mother sign anything electronically. Whereas,

Wilfong testified that Karen did sign the Agreement electronically from her laptop. In addition, there are issues with Wilfong's testimony as to the DocuSign audit trail because John was in the hospital at the time the audit trail indicates he electronically signed a document. The successor judge never observed the witnesses testify, yet based the ruling on the transcript. In that ruling, the successor judge essentially determined that Cardinal Court's witness was more credible than Karen and Doreen when the court concluded that Karen "signed" the ADR and was bound by its terms.

{¶ 30} For the foregoing reasons, this court finds that credibility issues were involved at the hearing on the motion to stay proceedings and compel mediation and arbitration, and the court erred in granting defendants' motion on the basis of the transcript. The factfinder must weigh the credibility of the witnesses' testimony in order to make a determination in this case. Therefore, the matter is remanded for a new hearing on defendants' motion.

{¶ 31} Although the plaintiffs urge this court to render a decision in the interest of judicial economy, we cannot review the trial court's determination without the trial court first holding a new hearing in order to personally assess the witnesses' credibility.

{¶ 32} Therefore, the first assignment of error is sustained.

{¶ 33} In plaintiffs' second assignment of error, they argue that the court erred by enforcing an invalid contract that will create piecemeal litigation and wastes judicial time and resources. Our disposition of the first assignment of error, however, renders the second assignment of error moot. App.R. 12(A)(1)(c).

{¶ 34} Accordingly, judgment is reversed and the matter is remanded for a hearing on defendants' motion to stay the proceedings and compel arbitration.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR