[Cite as *Miami Twp. Bd. of Trustees v. Weinle*, 2021-Ohio-2284.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MIAMI TOWNSHIP BOARD OF TRUSTEES, | : | APPEAL NO. C-200238 |
| | | TRIAL NO. A-1903850 |
| KIMBERLY CAMPBELL, | : | |
| DAVID CAMPBELL, | : | *O P I N I O N.* |
| RICHARD COX, | : | |
| WILLIAM KEYER, | : | |
| JUDITH LAMBERT, | : | |
| ERIC SCHUMANN, | : | |
| CONNIE WEBER, | : | |
| and | : | |
| SHIRLEY WHEELER, | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| MICHAEL J. WEINLE, | : | |
| MICHAEL WEINLE ENTERPRISES, INC., | : | |
| MICHAEL J. AUTO SALES, | : | |
| and | : | |
| WEINLE MOTORSPORTS, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed as Modified

Date of Judgment Entry on Appeal:  July 2, 2021

*Frost Brown Todd LLC, Ali Razzaghi, Benjamin Y. Yoder* and *Brodi J. Conover*, for Plaintiffs-Appellees,

*Keating Muething and Klekamp, PLL, Joseph L. Trauth, Jr., Brian P. Muething* and *Bradley R. Hoyt*, for Defendants-Appellants.

**HENDON, Judge.**

{¶1}    Defendants-appellants Michael J. Weinle, Michael Weinle Enterprises, Inc., Michael J. Auto Sales, and Weinle Enterprises ("Weinle"), appeal the trial court's issuance of an injunction against construction and operation of the Dirt Track.

## I.    Facts and Procedure

### A.  Miami Township's Request for an Injunction

{¶2}    Over the course of two years, Weinle constructed a dirt racetrack ("Dirt Track") at Edgewater Sports Park next to a paved drag strip[1] which has existed at Edgewater Sports Park since 1954.

{¶3}    In August 2019, the Miami Township Board of Trustees and several residents ("Miami Township") collectively filed a complaint against Weinle seeking a temporary restraining order ("TRO"), preliminary injunction, permanent injunction and other relief from the pending opening of the Dirt Track that month. The complaint stated that, with the Dirt Track being situated 250-500 feet from each of the plaintiffs-residents' respective properties, operation of the track would bring an influx of traffic, noise, dust migration,  lighting and other nuisances, which would cause irreparable harm to the residents. It claimed that the progress of construction of the Dirt Track, the date of the track's opening, and the schedule of events to come had been posted on the Dirt Track's website and Facebook pages.

{¶4}    In August 2019, the trial court granted Miami Township's request for a TRO to temporarily enjoin Weinle from doing further construction or conducting

---

[1] Miami Township did not seek to enjoin the operations of the existing track. (Appellee brief at 7).

operations on the track. During that hearing, counsel for Weinle stated that the Dirt Track was "built, practically," while Michael Weinle stated that the Dirt Track was not to open until September 2019.

{¶5} In October 2019, the parties agreed to an amended joint TRO whereby Weinle could continue construction and operation during specific hours, including operation and repair of motorized vehicles. The joint TRO further provided that "the action on the merits of Plaintiffs' request for a permanent injunction shall be consolidated with an evidentiary hearing on Plaintiffs' request for a preliminary injunction to be held on March 9-11, 2020."

B. The Hearing on Weinle's Motion to Dismiss

{¶6} In March 2019, the trial court held a hearing on Weinle's motion to dismiss for lack of subject-matter jurisdiction. Weinle argued that usage of the track had been limited since the TRO was issued six months prior, so there were no current nuisances and the matter should be continued for two or three months. Weinle further argued that the matter was not ripe because Miami Township's claims of nuisance were "future harms" that did not exist since Weinle had no current plans to open the track.

{¶7} Miami Township countered that the nuisance did not have to be present and ongoing in order for the court to exercise its equitable power. Miami Township argued that Michael Weinle's deposition, which had occurred in the prior week, reflected that Weinle was going to be running "tests and tunes" on Thursdays, that temporary stands, lighting and fence posts had been installed, and that Weinle intended to hold classes on the track. Weinle responded "we are very far from that."

{¶8} The trial court overruled Weinle's motion to dismiss.

4

C. The Trial

{¶9} In March 2020, the trial court consolidated the preliminary-injunction hearing with a trial on the merits for the permanent injunction pursuant to Civ.R. 65(B)(2). Miami Township's witnesses included the plaintiffs–three township residents, a township trustee, and the assistant fire chief–and two experts to testify about noise levels and air pollution.

{¶10} A few of the residents testified that he or she had attended least one dirt track drag race. The residents expressed that, based on their experiences, they were concerned about the level of dust migration, noises from the race cars, and increased traffic resulting from operations of the Dirt Track, and that such nuisances would affect their ability to enjoy activities inside and outside of their homes.

{¶11} Judith Lambert stated that she shares a property line with the Dirt Track and that, ever since Weinle had cleared trees away, she could clearly see the track from her yard. David Campbell, an experienced dirt track race car driver, testified that his property is about 230 feet away from the Dirt Track. Campbell's wife, Kim, expressed her concerns regarding how the level of dust that comes with dirt track racing will affect her asthma and her garden.

{¶12} Brien Lacey, the assistant fire chief, testified that smaller events at the existing drag strip cause traffic issues in the drag strip's direct vicinity, while larger events cause traffic to be backed up for nearly a mile in each direction and had impeded the fire department's ability to provide services in emergencies. He further testified that he has called the Hamilton County Sheriff's Office to control the traffic so the fire department could exit the drag strip. Lacey also testified that he saw bleachers for dirt track spectators had been set up.

{¶13} Eric Zwerling, a professor and director of the Rutgers University Noise Technical Assistance Center, testified as to measurements which he had taken at other local dirt racetracks using distances similar to those at issue in this case. Zwerling concluded that the sound level from a dirt racetrack at one-half of a mile away is 70 to 80 decibels—25 decibels higher, and six times louder, compared to the background noise when no dirt track racing is happening. He stated that, where the background sound exceeds 74 decibels, a person standing 19 inches away from another would not hear their raised voice. Zwerling based his research on values provided by the United States Environmental Protection Agency ("EPA")—which are widely accepted in his field and are the bases for many local and municipal noise ordinances (which generally limit noises to 60-65 decibels).

{¶14} Stephen Szuleck, an environmental scientist and director of the Rutgers University Air Pollution training programs, testified that he used the AP42 formula provided by the EPA to determine emission factors of particulate matter of unpaved roadways. Szuleck discussed the difference between vehicles which spin wheels while undergoing rapid acceleration on a paved road versus such acceleration on an unpaved road. Szuleck used data that he obtained while doing research at other local dirt track races. He concluded that, based on the typical four-hour duration of a race and the number of laps made, a typical dirt track race would create between 220-6000 pounds of particulate matter over the course of a mile within the four-hour time period. Szuleck testified that these levels significantly exceed the EPA's permissible emission limit even for PM2.5 fine inhalable particles.

{¶15} In June 2020, the trial court entered a judgment in favor of Miami Township. The court found that Miami Township had proven by clear and

convincing evidence that the Dirt Track was an intentional action, and an absolute private nuisance, which would interrupt use and enjoyment of the nearby residents' private property. The court concluded that the anticipatory nuisance would cause irreparable harm, thus a permanent injunction enjoining construction and operation of the Dirt Track was the "appropriate choice to restore balance." The court enjoined any operation or further construction of the Dirt Track.

## D. The Appeal

{¶16} Weinle maintains that the Dirt Track is "very-much-incomplete," in that $250,000 worth of work needed to be done in order to get the property ready for commercial racing, and $1 million was needed to make it a first-class facility. Weinle further argues that Miami Township only argued potential effects that the track would have on the residents.

{¶17} Miami Township argues that Michael Weinle's own testimony during his deposition, in addition to continued construction and updates posted on the Dirt Track's website and social media, show that Weinle still intended to open and operate commercial racing.

### 1. Subject-Matter Jurisdiction

{¶18} Weinle maintains that the matter was moot at trial because the Dirt Track did not open in August 2019 as anticipated. Weinle asserts that since the track did not open and remained incomplete, and there was no concrete schedule for the races, the immanency of opening and operating the track no longer existed. Miami Township counters that Weinle argues that the issue was moot only because the TRO enjoined Weinle from his anticipated opening in August 2019.

{¶19} Weinle argues the matter was not ripe because Miami Township could not pinpoint what the anticipatory nuisance would be, and the nuisance may not materialize. Miami Township asserts the matter is ripe under the anticipatory-nuisance standard, which is not required to materialize in order for a court to consider the claims.

### 2. Clear and Convincing Evidence – Anticipatory Nuisance

{¶20} Weinle contends that plaintiffs' evidence was not "convincing." He argues that the plaintiffs were not able to clearly and convincingly show that the track would have been completed or how the track would be operated. He further argues that the trial court "failed to faithfully apply" the portion of the anticipatory standard under *Gustafson v. Cotco Ent., Inc.*, 42 Ohio App.2d 45, 328 N.E.2d 409 (7th Dist.1974) in that "equity will not interfere" if what is sought to be enjoined "may or may not become a nuisance."

### 3. Injunction

{¶21} Weinle maintains the injunction is too broad because it does not permit "any use of a constructed track," yet there are a "wide variety of uses" other than commercial racing. Weinle also argues that the prohibition on all commercial racing is overbroad. Weinle states that the plaintiffs' complaint was focused only on commercial racing, and the injunction went beyond what the plaintiffs requested by prohibiting all activities.

{¶22} Miami Township counters that the injunction was well within the trial court's discretion and is consistent with other Ohio courts which have issued injunctions where dirt racetracks were declared nuisances.

## II.     Standard of Review

{¶23} The Ohio Constitution mandates that the subject-matter jurisdiction of the common pleas courts is limited to "justiciable matters." *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 20 (1st Dist.), quoting Ohio Constitution, Article IV, Section 4(B). The appropriate standard of review for the trial court's justiciability determination is an abuse-of-discretion standard. *Id.* at ¶ 16.

{¶24} "Mootness is a question of justiciability, and '[j]urisdiction and justiciability are threshold considerations in every case, without exception.' " *Saqr v. Naji*, 1st Dist. Hamilton No. C-160850, 2017-Ohio-8142, ¶ 20, quoting *Barrow v. New Miami*, 2016-Ohio-340, 58 N.E.3d 532, ¶ 12 (12th Dist.). Mootness presents a question of jurisdiction because a lack of an actual case or controversy between the parties renders it necessarily impossible for a court to grant any meaningful relief. *Brown v. Dayton*, 2d Dist. Montgomery No. 24900, 2012-Ohio-3493, ¶ 10. We review issues of justiciability for an abuse of discretion. *Waldman* at ¶ 16.

{¶25} Whether to grant or deny an injunction is within the discretion of the trial court, and a reviewing court will not disturb the judgment of the trial court absent an abuse of discretion. *Castillo-Sang v. Christ Hosp. Cardiovascular Assoc., LLC*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, ¶ 16. A party must prove entitlement to the requested relief by clear and convincing evidence. *State v. City of Cincinnati Citizens' Complaint Auth. and Black United Front,* 2019-Ohio-5349, 139 N.E.3d 947, ¶ 21 (1st Dist.).

{¶26} Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford,* 161 Ohio St. 469, 477, 120

N.E.2d 118 (1954). It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases, and it does not mean clear and *unequivocal*. (Emphasis added.) *Id.*

**{¶27}** We review legal issues decided within the injunction framework under a de novo standard. *City of Cincinnati Citizens' Complaint Auth.* at ¶ 21.

### III. <u>Assignment of Error</u>

#### A. <u>The Trial Court Had Subject-Matter Jurisdiction</u>

**{¶28}** The subject-matter jurisdiction of common pleas courts is limited to justiciable matters. *City of Cincinnati v. Fourth Natl. Realty, LLC*, 1st Dist. Hamilton Nos. C-180156 and C-180174, 2019-Ohio-1868, ¶ 25. A justiciable matter indicates "the existence of an actual controversy, a genuine dispute between adverse parties." *Waldman* at ¶ 21.

**{¶29}** In this case, the matter was justiciable. There was a genuine dispute between the parties as to whether the Dirt Track would be a nuisance to Miami Township and the residents—particularly those who lived within 500 feet of the track. Miami Township filed its claim for an injunction based on its contention that, if Weinle were not enjoined from opening and operating the Dirt Track, the residents would suffer irreparable harm from the nuisances which are known to be caused by dirt track racing. The court correctly determined that an injunction would be the only way to prevent the harm.

##### 1. The Matter Was Not Moot

**{¶30}** In general, a case is moot when there is no longer a live controversy. *State ex rel. Yost v. Baumann's Recycling Center, LLC*, 2020-Ohio-1504, 153 N.E.3d

928, ¶ 54 (8th Dist.). If an event that makes it impossible to grant the requested relief occurs, the case becomes moot and should be dismissed. *Id.*

{¶31} Weinle contends the matter was moot because the Dirt Track did not open. However, the track did not open because the trial court had issued a TRO enjoining it from opening pending the outcome of the permanent-injunction hearing. Weinle's activities related to construction and advertising of the track tend to show Weinle's intentions to open and operate the track at some point.

{¶32} The court appropriately exercised jurisdiction in its discretion to consider the matter. Once the TRO expired, the issue of the opening of the track, and the nuisance that Miami Township claimed it would cause, would become a live controversy again.

2.   The Matter Was Ripe For Consideration

{¶33} Weinle cites to *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998), in his argument that the principle of ripeness is reserved for real and imminent  matters. This argument fails as the issue in the instant case is an *anticipatory* nuisance, versus a nuisance which actually exists.

{¶34} In *Elyria Foundry Co.,* the court stated, "The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' " *Id.*, quoting *Mootness and Ripeness:  The Postman Always Rings Twice*, 65 Colum.L.Rev. 867, 876 (1965). The record reflects that the problems which Miami Township complained of were not abstract, hypothetical, or remote. The record supports the contention that Weinle

11

was taking steps toward opening the Dirt Track even after the TRO was issued. There is nothing abstract, hypothetical, or remote about continued construction, installing lights, bleachers, and walls, and advertising race schedules and dirt track racing classes.

{¶35} Furthermore, the court clearly stated that this was a matter of an anticipatory nuisance. According to *Brackett v. Moler Raceway Park, LLC*, 195 Ohio App.3d 372, 2011-Ohio-4469, 960 N.E.2d 484, ¶ 16 (12th Dist.), a court can enjoin an anticipatory nuisance where it clearly appears that a nuisance will necessarily result from a contemplated act. Weinle was taking actual steps to complete the Dirt Track for operation. Thus, the matter was ripe for consideration by the trial court and Weinle's assignment of error regarding subject matter-jurisdiction is overruled.

B. <u>The Trial Court's Decision Was Based on Clear and Convincing Evidence</u>

{¶36} A party requesting a preliminary injunction must show by clear and convincing evidence that (1) there is a substantial likelihood that she/he will prevail on the merits, (2) she/he will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction. *Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 16. In determining whether to grant or deny injunctive relief, a court must balance all four factors, and no single factor is dispositive. *Id.*

{¶37} A party is not required to suffer actual harm in order to secure injunctive relief; it merely must prove the existence of an actual threat of harm. *City of Cincinnati Citizens' Complaint Auth.*, 2019-Ohio-5349, 139 N.E.3d 947, at ¶ 15.

**{¶38}** Because the grant of a permanent injunction is not an interim remedy, a court may only issue it after a hearing in which the moving party demonstrated success on the merits of its underlying claim. *Id.* at ¶ 20. The party seeking a permanent injunction must also demonstrate that the injunction is necessary to prevent irreparable harm and that no adequate remedy at law is available. *Id.*

**{¶39}** As the fact finder, a trial judge is presumed to have considered only admissible, relevant, material, and competent evidence in arriving at a decision to permanently enjoin a commercial operation of motocross track. *Angerman v. Burick*, 9th Dist. Wayne No. 02CA0028, 2003-Ohio-1469, ¶ 26.

**{¶40}** Weinle's argument that Miami Township's claims are hypothetical fails. The record reflects Weinle's intention to open the Dirt Track at some point. His continued construction and advertising of the anticipated opening of the Dirt Track created a threat of harm to Miami Township and the residents. Weinle's own attorney referred to Michael Weinle's testimony in his depositions, which occurred just one week prior to the hearing on his motion to dismiss, where he stated that he was going to be holding classes and running "tests and tunes" as soon as he could at the Dirt Track.

**{¶41}** Miami Township presented competent, credible witnesses who provided admissible testimony. The witnesses consisted of a township trustee, a township assistant fire chief, residents who each lived between 230 and 500 feet of the Dirt Track, and qualified experts. Each of these witnesses testified as to their personal knowledge of dirt track races as dusty and noisy, in addition to other supporting testimony.

13

{¶42} Lacey, the assistant fire chief, testified to his experience with increased traffic during large events at the existing drag strip. Lambert testified that she has had to deal with traffic backing up to her property during events at the existing drag strip. Miami Township's witnesses expressed concern that operation of the Dirt Track will increase traffic where their homes are in close proximity to the track.

{¶43} Collectively, both lay and expert testimony showed that there is a difference between the effects of a dirt track that is situated away from residences and one that is within 500 feet of several residential homes. The expert testimony, backed up with research, showed that the impact of dust emission and noise emission alone is likely to create a burdensome nuisance on residents within one-half mile of the Dirt Track–and the plaintiff-residents all lived within 500 feet of the track.

{¶44} Miami Township apparently prevailed on the merits as the evidence clearly and convincingly showed that dirt track racing is exponentially noisy and dusty. Based on the numbers of attendees and duration of the races, the Dirt Track is likely to significantly increase traffic in the area. Due to the proximity of the plaintiffs-residents' respective properties to the Dirt Track, the residents would suffer irreparable injury, i.e., threats to their health, safety, and property, if the injunction were not granted. The record is devoid of evidence that any third parties would be unjustifiably harmed if the injunction is granted. Finally, public interest was served by the injunction as it prevented any further impediment to delivery of emergency services, and it served to protect the property, safety and health interests of those living within a half-mile of the Dirt Track.

{¶45} Because the hearings on the preliminary injunction and permanent injunction were combined, we consider the same evidence offered on the preliminary injunction on the request for a permanent injunction. The evidence clearly and convincingly demonstrated that a permanent injunction was necessary to protect Miami Township and its residents from the threats posed against their health, safety, and properties by operation of the Dirt Track, and that no other adequate remedy at law is available to them.

{¶46} The evidentiary standard does not call for certainty here. Rather, it need only show likelihood that the claims will materialize. The record reflects that there was clear and convincing evidence to prove that operation of the Dirt Track met the anticipatory-nuisance standard in that, more likely than not, the level of noise, dust, increased traffic, and other nuisances likely to result from operations of the Dirt Track posed an actual threat to Miami Township and the residents.

### C.  A Trial Court Has Broad Discretion

{¶47} Regardless of the label placed on a nuisance, a trial court retains broad discretion in fashioning the terms of an injunction concerning the nuisance. *Bracket v. Molar Raceway Park, LLC.,* 195 Ohio App.3d 372, 2011-Ohio-4469*,* 960 N.E.2d 484, ¶ 16 (12th Dist.); *Angerman v. Burick*, 9th Dist. Wayne No. 02CA0028, 2003-Ohio-1469, ¶ 18.

{¶48} Operation of a drag strip racing track in the vicinity of residential and agricultural properties may, because of extraordinary noise during races, constitute such a nuisance in fact that owners and occupants of residential property in vicinity are entitled to have such an operation enjoined. *Gustafson v. Cotco Ent. Inc.*, 42 Ohio App.2d 45, 328 N.E.2d 409 (7th Dist.1974). Construction of a proposed drag

strip racetrack in a residential or rural neighborhood can be enjoined where the operation of the track would create such an unreasonable amount of noise that it would seriously interfere with owners' and occupants' use and enjoyment of their surrounding properties. *Id.*

{**¶49**} Miami Township met its burden of proof in showing the level of noise and dust emissions from operating the Dirt Track alone were sufficient to constitute an anticipatory nuisance. The record reflects that even the construction of the Dirt Track had been bothersome to the nearby residents; Campbell had to move his trailer due to the amount of dust emitted during the construction of the dirt track and Lambert can now see the track from her property since trees had been cleared to construct the track.

{**¶50**} Still, an injunction must not be overly broad. Equity requires that any injunction be narrowly tailored to prohibit only complained-of activities. *Myers v. Wild Wilderness Raceway, L.L.C.*, 181 Ohio App.3d 221, 2009-Ohio-874, 908 N.E.2d 950, ¶ 28 (4th Dist.). The injunction must also be specific enough to permit the defendant to comply without fear of committing an unwilling violation. *Adkins v. Boetcher*, 4th Dist. Ross No. 08CA3060, 2010-Ohio-554, ¶ 43.

{**¶51**} While the trial court properly exercised its broad discretion to enjoin the opening and operation of the Dirt Track, restricting Weinle "from further construction" on the Dirt Track and ordering Weinle to remove the barrier fence, concrete barrier, lights, etc. went beyond the scope of Miami Township's complaint. The barrier fence, concrete barrier and lights were not claimed to create a nuisance, and the injunction does not explain the reasoning for removing these items.

16

{¶52} Should Weinle choose to construct the space where the Dirt Track lies for a different activity, he is at risk of violating the injunction by engaging in activity that is not related to dirt track racing. Its restriction of any construction on the Dirt Track lacks specificity, putting Weinle at risk of unwillingly violating the order.

D. <u>Awarding Attorney Fees – Injunctions</u>

{¶53} In Ohio, under the "American Rule," a prevailing party cannot recover attorney fees and expenses unless there is specific statutory authority for it or punitive damages are awarded. *State ex rel. Delhi Twp. v. Wilke*, 27 Ohio App.3d 349, 351, 501 N.E.2d 97 (1986).

{¶54} In claims for injunctive relief, R.C. 3767.03 provides for attorney fees only where a court decides that an injunction was wrongfully brought, not prosecuted to final judgment, was not maintained, or should not have been granted. Therefore, attorney fees are allowable only to defendants as damages for services rendered in procuring dissolution of the injunction. *Fancher v. Lawrence*, 4th Dist. Lawrence No. 1962, 1992 WL 42793, *8 (Mar. 6, 1992); *see Wumer v. Lake*, 6th Dist. Wood No. WD-88-53, 1989 WL 108759, *2 (Sept. 22, 1989). Therefore, the trial court erred in awarding attorney fees in this matter.

## IV. **Conclusion**

{¶55} The trial court did not err in exercising subject-matter jurisdiction. The issues were justiciable and ripe for consideration by the court. Based on Weinle's own statements and actions, coupled with the evidence offered by Miami Township, Weinle's argument that the opening of the track was "not imminent" fails. Weinle's first assignment of error is overruled.

{¶56} The trial court granted the permanent injunction based on clear and convincing evidence. Each resident testified as to his or her personal knowledge that dirt track races are loud and noisy and that it will increase traffic where each of their homes are in close proximity to the track. Collectively, both lay and expert testimonies showed that there is a difference between a dirt track that is situated away from residences and one that is within 500 feet of several residential homes. The evidence sufficiently illustrated the likely effect that noise, dust level, and increased traffic caused by dirt track racing would have on the residents and Miami Township. The evidence showed that a permanent injunction was the only adequate remedy at law. Weinle's second assignment of error is overruled.

{¶57} The trial court properly determined that enjoining construction and operation of a commercial race track was necessary. In its broad discretion, the court fashioned the injunction to ensure protection of Miami Township and the residents from those harms.

{¶58} However, the injunction should have only enjoined Weinle from further construction directly related to opening and operating dirt track racing. It fails to specify how the barrier fence, concrete barrier, or lights, etc. cause irreparable harm to Miami Township. Therefore, we strike the language within the injunction which enjoins construction on the track and that which requires him to remove the aforementioned items from the premises. Weinle's third assignment of error is sustained.

{¶59} We also strike the language awarding attorney fees to Miami Township. We affirm the judgment as modified.

Judgment affirmed as modified.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

      The court has recorded its entry on the date of the release of this opinion.