[Cite as *West v. Cincinnati*, 2024-Ohio-1951.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| FRANK WEST, | : | APPEAL NO. C-230469 |
| | | TRIAL NO. A-2303087 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| AFTAB PUREVAL, MAYOR, CITY OF CINCINNATI, | : | |
| | : | |
| EMILY SMART WOERNER, CITY SOLICITOR, CITY OF CINCINNATI, | : | |
| | : | |
| and | : | |
| TERESA A. THEETGE, CHIEF OF POLICE, CITY OF CINCINNATI, | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 22, 2024


*Cohen, Todd, Kite & Stanford, LLC, John L. O'Shea, Mark P. Painter* and *Merlyn D. Shiverdecker*, for Plaintiff-Appellee,

*Emily Smart Woerner*, City Solicitor, and *Scott M. Heenan* and *Shuva J. Paul*, Senior Assistant City Solicitors, for Defendants-Appellants.

**BERGERON, Judge.**

{¶1} In some respects, plaintiff-appellee Frank West's failure to lock up his gun at home, and his son's gunshot injury resulting from a friend accessing and firing it, demonstrated the purpose of defendant-appellant city of Cincinnati's new "safe storage" gun law, Cincinnati Municipal Ordinance ("CMC") 915-3. As one council member put it, "Our message is lock it up or get locked up." But, as Mr. West argues in this appeal, the city's attempt to regulate firearm storage under the guise of a child endangerment statute runs into a familiar problem for local governments in Ohio: R.C. 9.68, which operates to ban most local gun regulations. The trial court accordingly properly ordered injunctive relief in favor of Mr. West, but the court went too far in enjoining the entire city ordinance (which even Mr. West now concedes), and thus we modify its injunction because of its overbreadth. We accordingly affirm its judgment only insofar as it enjoined CMC 915-3(b), which proscribes the negligent storage of firearms in connection with child endangerment, but we reverse its judgment enjoining the balance of CMC 915.

I.

{¶2} The impetus for Mr. West's civil case for declaratory and injunctive relief arose in the Hamilton County Municipal Court's Criminal Division, where he faced charges for two counts of endangering children under state law, in violation of R.C. 2919.22, two counts of endangering children under a city ordinance, in violation of CMC 915-3, and one count of negligent assault, in violation of R.C. 2903.14. These charges stem from an incident in April 2023, when Mr. West left an unloaded but unsecured firearm at home where his minor son and his son's friend could access it. With Mr. West out of the house, the son's friend picked up the gun and managed to

load it before shooting Mr. West's son in the back. Additional facts about the incident are not part of our record in this appeal and are not necessary for its resolution.

{¶3} About two months after the charges were filed against him, Mr. West jumped over to the Hamilton County Court of Common Pleas, filing suit against defendants-appellants the city of Cincinnati, Mayor Aftab Pureval, City Solicitor Emily Smart Woerner, and Chief of Police Teresa Theetge (collectively, the "City"). He asked the court for a declaratory judgment under R.C. Chapter 2721 that CMC 915, on its face and in its entirety, violated the Second and Fourteenth Amendments to the U.S. Constitution and Article I, Section 4 of the Ohio Constitution. He also argued the ordinance was void for unconstitutional vagueness and because R.C. 9.68 preempted it, and he asserted the ordinance was unconstitutionally overbroad as applied to him. Mr. West accordingly asked the court to enjoin the City from enforcing CMC 915 against him and sought damages, costs, and attorney's fees. The same day, he filed a motion for a temporary restraining order and preliminary injunction against the enforcement of CMC 915-3.

{¶4} The City enacted CMC 915 in early 2023, adding it as a new chapter labeled "Weapons Offenses" under Title IX ("Misdemeanors") of the city code. The heart of the chapter is CMC 915-3, titled "Child Endangering," under which the City established its "safe storage" gun law. CMC 915-3, in relevant part, provides:

(a) No person who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child shall create a substantial risk to the health or safety of the child by violating a duty of care, protection, or support.

3

(b) It shall be a substantial risk to the health or safety of a child for a person who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child to negligently store or leave a firearm in a manner or location in the person's residence or vehicle where the person knows or reasonably should know a child is able to gain access to the firearm.

(c) This section does not apply to a person who does either of the following:

(1) Stores or leaves a firearm in the person's residence or vehicle if the firearm is kept in safe storage; or

(2) Stores or leaves a firearm in the person's residence or vehicle if a child gains access to the firearm as a result of any other person's unlawful entry into a person's residence or vehicle.

(d) Penalties. Whoever violates this section is guilty of a first degree misdemeanor.

{**¶5**}   In a separate section, CMC 915-5 criminalizes having weapons while under disability in a way that the parties agree generally mirrors state law.  At the time Mr. West filed his civil suit, the only other section of CMC 915 was CMC 915-1, which contains an array of definitions relevant to the chapter.[1]  Most important of these is CMC 915-1-S, which defines "[s]afe storage" as:

---

[1] Since this suit commenced, the City enacted CMC 915-7, which establishes reporting requirements for the known loss or theft of a firearm or dangerous ordnance.  CMC 915-7 was not part of the trial court's injunction, and we have no occasion to consider it in this appeal.

(a) a device that, when installed on a firearm, is designed to prevent the firearm from being operated without first deactivating the device;

(b) a device incorporated into the design of the firearm that is designed to prevent the operation of the firearm by anyone not having access to the device; or

(c) a safe, gun safe, gun case, lock box, or other device that is designed to be or can be used to store a firearm and that is designed to be unlocked only by means of a key, a combination, or other similar means.

If a person stores a device in a way that meets this definition of "safe storage," CMC 915-3(c)(1) dictates that CMC 915-3 "does not apply" to them.

{¶6} The core of Mr. West's challenge to CMC 915-3 is that it is preempted by R.C. 9.68, Ohio's blanket statute limiting the power of local governments to enact firearm regulations. In part, R.C. 9.68(A) "declares null and void" any "license, permission, restriction, delay, or process" imposed by political subdivisions of the state regarding many aspects of firearm ownership and trade, including storage. R.C. 9.68(A). As a remedy, R.C. 9.68(B) provides a private right of action for any "person, group, or entity adversely affected" by a city ordinance or other local government regulation enacted or enforced in conflict with the limits imposed in R.C. 9.68(A) and affords "reasonable expenses" to anyone who "prevails" in such a challenge. R.C. 9.68(B).

{¶7} The City moved to dismiss this suit under Civ.R. 12(B)(6), primarily on the grounds that equitable relief should not be granted where an adequate remedy at law exists, pointing to Mr. West's criminal case and the option of a motion to dismiss

5

the CMC 915-3 charges. It also contested his standing to challenge the entirety of CMC 915 rather than just CMC 915-3. Shortly thereafter, Mr. West moved to dismiss his CMC 915-3 charges in the criminal case on grounds similar to those that he raised in his civil suit.

{¶8} The trial court below here acted first. At the conclusion of an August 2023 hearing on Mr. West's motion for a temporary restraining order and preliminary injunction and the City's motion to dismiss, the court granted a *permanent* injunction against the enforcement of CMC 915 in its entirety and denied the City's motion without further argument or evidence. The City then requested written findings of fact and conclusions of law.

{¶9} In its entry, the trial court declared that "R.C. 9.68 preempts and voids CMC 915 including CMC 915-3" and made no findings of fact, concluding that the issues before it presented purely questions of law. It determined it was "bound by established precedent" on that question, citing *City of Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370 (upholding the constitutionality of a prior version of R.C. 9.68), and that the 2018 and 2022 amendments to R.C. 9.68 did not alter the relevant language.[2] It further held that Mr. West prevailed on the merits of his claims, he would suffer irreparable injury absent a permanent injunction, the injunction would serve the public interest and would not cause unjustifiable harm, and no after-the-fact remedy would be adequate in light of his pending prosecution "for a criminal offense that could result in loss of his freedom," adding, "He has legal and other expenses because of this." In line with this conclusion, it awarded reasonable

---

[2] As we explain below, we take no position on the constitutionality of R.C. 9.68 in light of the parties' arguments before us.

costs, including attorney's fees, pursuant to R.C. 9.68(B), but did not specify an award amount. Further, it concluded that because R.C. 9.68(B) explicitly authorizes Mr. West's action in equity, it was not improperly interfering with his criminal case by issuing the injunction. The court declined to decide his constitutional challenges to CMC 915, citing the constitutional avoidance canon.[3]

{¶10} The City appealed, raising procedural concerns with the trial court's injunction, challenging the court's decision to proceed in equity despite the ongoing criminal proceedings, and contesting the injunction on overbreadth and vagueness grounds. With this appeal pending, Mr. West's criminal charges under CMC 915-3 were dismissed, as that trial court cited a conflict with R.C. 9.68. He then proceeded to trial on his state charges, where he was acquitted of the negligence charge and of one of the child endangerment charges brought under R.C. 2919.22 (relating to his son) but was convicted of the other child endangerment charge (relating to the son's friend). In late September 2023, this court stayed the trial court's declaratory judgment and permanent injunction pending appeal.

II.

{¶11} We first address the procedural posture of this appeal and its relationship to an appeal also before this court that concerns the constitutionality of R.C. 9.68, followed by the City's procedural arguments in this appeal. We then turn to the merits of the trial court's injunction order.

---

[3] Those constitutional issues are likewise not specifically presented by either party in this appeal, and thus we have no occasion to consider them.

A.

{¶12} In September 2023, in a separate case, a different trial court judge granted the City's request for a preliminary injunction of the 2018 and 2022 amendments to R.C. 9.68 on the grounds that they violated the home rule provisions of the Ohio Constitution. The state appealed the injunction of amended R.C. 9.68 in a separate case also before this court, and we denied a stay of that injunction pending appeal. *City of Cincinnati v. State*, 1st Dist. Hamilton No. 230492 (Nov. 9, 2023).

{¶13} In the appeal now before us, the City does not challenge the trial court's conclusion that it was bound by the Supreme Court of Ohio's determination in *City of Cleveland v. State* that the version of R.C. 9.68 prior to the 2018 and 2022 amendments comported with Article XVIII, Section 3 of the Ohio Constitution, also known as the Home Rule Amendment. *City of Cleveland*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 35. It also does not challenge the trial court's holding that the amendments do *not* affect the outcome of this case and that "the language relevant here is the same." In light of the absence of any arguments raising constitutional challenges to R.C. 9.68 in the case before us, we therefore assume without deciding, for purposes of this appeal, that the current version of R.C. 9.68 is constitutional.

B.

{¶14} Next, we acknowledge a potential mootness concern with Mr. West's appeal and the underlying injunction, given the resolution of his CMC 915-3 charges and the related state charges in his criminal proceedings. "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-

8

Ohio-24, 97 N.E.3d 487, ¶ 9, citing *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37. Assuming, for the sake of argument, that the City cannot bring charges against Mr. West under CMC 915-3 again because the charges would be barred by the constitutional protection against double jeopardy (based on the resolution of his state charges), he is no longer threatened with prosecution under CMC 915-3. We broached this mootness question at oral argument and both parties assured us that the dispute remained a live one. We ultimately agree that this case presents a live controversy because R.C. 9.68(B) affords a civil plaintiff "reasonable expenses" when they prevail in challenging a local ordinance as in conflict with R.C. 9.68(A). If the City is correct on the merits of this appeal and the injunction was accordingly vacated in full, Mr. West would not be entitled to reasonable expenses because he did not prevail. Conversely, if he does prevail, he is still entitled to those reasonable expenses. Those determinations would be before the trial court on further consideration. The appeal is therefore a live controversy and not moot.

C.

{¶15} We now turn to the City's two assignments of error relating to procedure (its second and fourth assignments). First, it insists that the trial court abused its discretion by proceeding to the merits of the permanent injunction during the hearing on Mr. West's motion for a temporary restraining order and preliminary injunction. Under Civ.R. 65(B), "the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application" before or after the commencement of the preliminary injunction hearing. We review its decision to do so for an abuse of discretion. *See* Civ.R. 65(B) (providing that a trial court "may" order

9

the consolidation); *Ohio Serv. Group, Inc. v. Integrated & Open Sys., L.L.C.*, 10th Dist. Franklin No. 06AP-433, 2006-Ohio-6738, ¶ 10.

**{¶16}** The parties agree that the trial court consolidated the permanent injunction trial into the preliminary injunction hearing without notice. Several Ohio courts have found error in such a consolidation absent a formal consolidation order prior to the hearing or some other form of notice that the trial court intends to proceed to the merits at the hearing. *See id.* at ¶ 10, citing *Turoff v. Stefanac*, 16 Ohio App.3d 227, 475 N.E.2d 189 (8th Dist.1984); *Gionino's Pizzeria Inc. v. Reynolds*, 7th Dist. Carroll No. 20 CA 0940, 2021-Ohio-1289, ¶ 44. This aligns with the U.S. Supreme Court's interpretation of the near-identical federal rule and its relationship to due process. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), quoting *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972) (" '[T]he parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.' "). Such notice enables parties to be prepared and to marshal an appropriate evidentiary record to prosecute or defend the injunction.

**{¶17}** Even so, a court does not abuse its discretion by consolidating the trial into the preliminary hearing without notice if the parties did not suffer prejudice from this maneuver. *See Strah v. Lake Cty. Humane Soc.*, 90 Ohio App.3d 822, 835, 631 N.E.2d 165 (11th Dist.1993); *MD Acquisition, LLC v. Myers*, 10th Dist. Franklin Nos. 11AP-390 and 11AP-412, 2013-Ohio-3825, ¶ 31; *see also* 11A Wright and Miller, *Federal Practice & Procedure*, Section 2950 (3d Ed.2023) ("[O]rdering consolidation

during the course of a preliminary-injunction hearing is reversible error when little or no notice is given of this change and the effect is to deprive a party of the right to present the case on the merits. A party contesting the entry of final judgment at the preliminary-injunction stage, however, must demonstrate prejudice as well as surprise.").

{¶18} The City claims prejudice from the unnoticed consolidation because it was "denied the ability to develop [its] case against a permanent injunction and refused the opportunity to prepare and present evidence in [its] favor." But the trial court considered the dispute "purely a question of law," and it remains unclear what additional facts, if any, could have been developed to oppose Mr. West's request for relief. The City mentions in a footnote that the trial court declined to receive evidence that the Ohio Attorney General ("OAG") concluded that R.C. 9.68 and CMC 915 were "in harmony," but it never proffered that evidence before the trial court, nor did it explain how it would have developed the record with notice of the consolidation (and any such opinion from the OAG also strikes us as additional legal argument, rather than factual). A party in the City's position aggrieved by consolidation like this should at least make a proffer to the trial court to highlight what evidence it would have introduced with adequate notice. Otherwise, we are left with little more than speculation on appeal. And, in this case, we agree with the trial court that the issues before us are fundamentally questions of law. Accordingly, as best we can tell from the record, the City did not suffer prejudice from the unnoticed consolidation, and the court's decision to proceed to the merits of the permanent injunction without notice did not constitute an abuse of discretion. We therefore overrule the City's second assignment of error.

{¶19} Next, the City attacks the trial court's adoption and journalization of Mr. West's proposed findings of fact and conclusions of law before the City had the opportunity to lodge objections under Civ.R. 52 and Local Rule 17(B) of the Hamilton County Court of Common Pleas. But its prejudice argument assumes that this court will conclude that at least one issue raised on appeal was not preserved below, and we do not have any such preservation concerns. The City raised the substantive arguments now before us in its motion to dismiss Mr. West's requests for declaratory and injunctive relief below. And because the City was only made aware for the first time at the end of the preliminary injunction hearing that the trial court was consolidating the trial into the hearing and ordering a permanent injunction, it did not have a meaningful chance to object to that decision. Nonetheless, in a list of objections to the trial court's injunction entry that the City filed on the same day that the trial court issued its order, the City objected to the consolidation and argued the trial court prevented it from presenting evidence (again, without specifying what evidence was precluded). Accordingly, we conclude that it preserved all of its arguments for appeal, rendering at worst harmless any error in terms of compliance with Civ.R. 52 and the concomitant local rule. We therefore overrule the City's fourth assignment of error.

III.

{¶20} Turning to the merits, the City appeals the trial court's order declaring CMC 915, and specifically CMC 915-3, as null and void because it is preempted by R.C. 9.68, the statewide firearms uniformity law. It also contests the court's order permanently enjoining the City from enforcing CMC 915-3 against anyone and the court's denial of the City's motion to dismiss. "[T]he three prerequisites to declaratory relief are (1) a real controversy between the parties, (2) justiciability, and (3) the

12

necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 19, citing *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93, 97-98, 296 N.E.2d 261 (1973). Injunctive relief often flows from a declaratory judgment that a particular law is unconstitutional or otherwise void. *See, e.g., Peltz v. S. Euclid*, 11 Ohio St.2d 128, 134, 228 N.E.2d 320 (1967). "A permanent injunction is issued after the movant has demonstrated a right to relief under the applicable substantive law." *Vontz v. Miller*, 2016-Ohio-8477, 111 N.E.3d 452, ¶ 25 (1st Dist.), citing *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000). "A party seeking a permanent injunction must show," by clear and convincing evidence, "that the injunction is necessary to prevent irreparable harm and that the party does not have an adequate remedy at law." *Stoneham* at 267-268.

{¶21} Across its first and third assignments of error, the City advances two main arguments against the substance of the trial court's order. First, it argues the trial court should have followed traditional principles of equity and abstained from addressing Mr. West's request for injunctive relief due to his pending criminal case because he had an adequate remedy at law in that case. Second, it claims that no parts of CMC 915 are preempted by R.C. 9.68 and that CMC 915-3 sits in harmony with the state's child endangerment statute. To the extent any sections of CMC 915 conflict with R.C. 9.68, the City maintains that the trial court's order was otherwise overbroad and should be confined to those sections. We address these arguments in turn and agree with the City regarding only the injunction's overbreadth.

A.

**{¶22}** At issue in the City's first argument is the general principle that "[e]quitable relief is never granted where there is an adequate remedy at law," particularly during the pendency of a criminal prosecution, because "[o]rdinarily full protection is afforded by defending a prosecution for violation of a penal ordinance." *Olds v. Klotz*, 131 Ohio St. 447, 452, 3 N.E.2d 371 (1936); *see Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988) ("An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law. It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot."); *City of Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, ¶ 15. This principle is built into the general test for issuance of permanent injunctions, under which the plaintiff must show they lack an adequate remedy at law. *See Stoneham* at 267. Mr. West asserts that R.C. 9.68(B), by its plain terms, creates an exception to this principle.

**{¶23}** The application of this abstention principle and whether R.C. 9.68 creates an exception to it pose questions of law that this court reviews de novo, both in the context of the court's grant of declaratory and injunctive relief and its denial of the City's motion to dismiss. *See Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 15-17 (determinations of law pursuant to a request for declaratory relief reviewed de novo); *State v. City of Cincinnati Citizen Complaint Auth.*, 2019-Ohio-5349, 139 N.E.3d 947, ¶ 21 (1st Dist.), citing *Vontz*, 2016-Ohio-8477, 111 N.E.3d 452, at ¶ 26, and *City of Cleveland*, 157 Ohio St. 3d 330, 2019-Ohio-3820, 136 N.E.3d 466, at ¶ 15 (permanent injunctions generally reviewed for an abuse of

discretion, but de novo on questions of law); *Thomas v. Othman*, 2017-Ohio-8449, 99 N.E.3d 1189, ¶ 19 (1st Dist.) (motions to dismiss reviewed de novo).

> **{¶24}** The Supreme Court of Ohio has articulated the principle as follows:
>
> The legitimate place for the trial of criminal cases is in the courts established for that purpose and courts of equity will not oust the proper forum by drawing to themselves litigation which will prevent criminal courts from exercising their jurisdiction. So long as the defense which may be made in impending criminal prosecution is adequate to protect the rights of the accused, equitable relief by injunction is not available to him.

*Troy Amusement Co. v. Attenweiler*, 137 Ohio St. 460, 465, 30 N.E.2d 799 (1940). The court has acknowledged an exception to this principle "in those cases in which public authorities or private persons seek to enforce [1] unconstitutional and invalid legislation [2] whereby vested property rights will be interfered with to the extent of causing [3] irreparable injury for which there is no adequate remedy at law." *Id.* at 466; *see Olds* at 452, citing *Dobbins v. Los Angeles*, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904); *Garono* at 174 (holding equitable relief was unavailable to a criminal defendant in part because his "property rights [were] * * * adequately protected through the criminal process"). Since *Troy Amusement Co.*, the court has clarified that "[t]he fact that the constitutional issues raised in [a civil] case could also be raised as a defense in [a] criminal action does not necessarily mean that such a defense is an adequate remedy." *Anderson v. Brown*, 13 Ohio St.2d 53, 56, 233 N.E.2d 584 (1968) (finding equitable relief appropriate because the criminal defendant faced harm to his business and was placed in an untenable position of either complying with a licensing

law he was charged with violating or facing additional, repeated prosecutions under that law if he continued to challenge it).

{¶25} The City argues that, despite the private right of action established in R.C. 9.68(B), traditional principles of equity should govern. It thus posits that the trial court should have dismissed the suit in light of the pending criminal prosecution because R.C. 9.68(B) only generally allows for equitable relief without establishing specific conditions under which a court should grant such relief. In the case at the origin of this argument, the Supreme Court of Ohio held that, to prove a right to relief under a state statute that granted government agents the right to sue for injunctive relief *and* established specific conditions under which relief should be granted, the plaintiff did not need to meet additional conditions, and the court did not have to engage in a traditional balancing of equities. *See Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 57-58, 378 N.E.2d 145 (1978) (holding that injunctions should be granted in actions brought by the Director of the Ohio Department of Health under R.C. 3721.08 so long as the statutory conditions are met).

{¶26} In a case distinguishing *Ackerman*, this court held that because the statute in question (R.C. 309.13, which authorizes taxpayer actions for injunctive relief) granted a right of relief *without* specifically identifying prerequisites under which relief should be granted, that actions pursuant to the statute "are to be governed by the equitable principles which apply to injunction actions generally." *State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.*, 124 Ohio App.3d 184, 188-189, 705 N.E.2d 1247 (1st Dist.1997) (holding that a traditional balancing of equities was required and that the plaintiff needed to show irreparable harm and the absence of an adequate remedy at law). We instead followed *State ex rel. Miller v. Anthony*, 72 Ohio St.3d

16

132, 647 N.E.2d 1368 (1995), in which the Supreme Court of Ohio held that actions pursuant to nuisance abatement statutes that did not establish specific prerequisites for relief were "governed by the same equitable principles that apply to injunctive actions generally," and thus a right to a jury trial did not attach to such actions. *Anthony* at 136.

{¶27} Here, the City's attempts to apply the abstention cases, including *Olds* and *Troy Amusement Co.,* and the "general principles of equity" cases, like *Jones* and *Anthony*, to Mr. West's case and R.C. 9.68 are unpersuasive for two main reasons.

{¶28} First and foremost, none of the equity abstention cases involving pending criminal prosecutions dealt with a statute that expressly granted a person "adversely affected" by a city ordinance, which clearly encompasses those facing criminal prosecution under it, the express right to seek declaratory and injunctive relief on the grounds the ordinance is preempted by state law and void. *See* R.C. 9.68(B). Based on the broad nature of the right of action created under R.C. 9.68(B) to enforce the statewide firearms uniformity provisions of R.C. 9.68(A), the General Assembly carved an exception to the traditional requirement that courts should abstain from granting injunctive relief during the pendency of criminal proceedings against the plaintiff seeking relief. "When the rights of parties are clearly defined and established by law (especially when the source of such definition is through constitutional or statutory provision) the maxim 'equity follows the law' is usually strictly applied." *Civ. Serv. Personnel Assn. v. Akron*, 48 Ohio St.2d 25, 27, 356 N.E.2d 300 (1976); *see State ex rel. Schwaben v. School Emps. Retirement Sys.*, 76 Ohio St.3d 280, 285, 667 N.E.2d 398 (1996) ("[W]hile it may be tempting to decide this case on subjective principles of equity * * *, this court has a greater obligation to follow the

17

law."); *Kimber v. Davis*, 10th Dist. Franklin No. 12AP-888, 2013-Ohio-1872, ¶ 17 (citing cases and holding that, "despite the equity and fairness principles involved in this case, we cannot use these concepts to override the clear statutory language of [the controlling statutes]"). Thus, we conclude that through R.C. 9.68(B), the General Assembly obviated Mr. West's need to show that his criminal proceedings do not provide an adequate remedy at law, and the trial court did not err by applying the language of the state law over the general equitable principle that courts should abstain in such situations.

{¶29} Second, we view this case as distinct from *Jones* and *Anthony*. Neither of those cases dealt with the same principle at issue here—a court acting in equity abstaining due to a pending criminal prosecution. Further, R.C. 9.68(B) differs from the statutes at issue in those cases because it grants a private right of action to a person facing criminal prosecution under a city ordinance that, if enacted or enforced in a way that conflicts with R.C. 9.68(A), is null and void under state law. The statute also grants that person the right to recover "reasonable expenses" when they prevail on that argument, incentivizing a person facing prosecution for violating the local ordinance to seek a remedy in equity in addition to or instead of simply defending himself in the criminal case. R.C. 9.68(B).

{¶30} Therefore, Mr. West had the right to file a civil action for declaratory and injunctive relief to prevent the City from enforcing CMC 915-3 against him, and the trial court did not err by ruling on it during the pendency of his criminal proceedings. The court also did not err by denying the City's motion to dismiss on abstention grounds. We therefore overrule the City's first assignment of error.

B.

**{¶31}** We next assess whether any sections of CMC 915 are preempted by R.C. 9.68(A), in which case the latter would render those sections of the ordinance "null and void." The trial court concluded that because CMC 915-3 "attempts to regulate storage of firearms, it directly violates the General Assembly's stated intent to establish uniform laws throughout the state." To the extent CMC 915-3 creates restrictions on firearms storage not provided for by state or federal law, we agree, as discussed below. But throughout its order, the trial court repeatedly described the injunction as encompassing all of CMC 915, despite at other times specifically enjoining the enforcement of only CMC 915-3. To the extent the court enjoined sections of CMC 915 not relating to firearms or not in conflict with R.C. 9.68, we must modify its injunction to exclude those sections.

**{¶32}** Although a trial court has "broad discretion in fashioning the terms of an injunction," the "injunction must not be overly broad," and "[e]quity requires that any injunction be narrowly tailored to prohibit only complained-of activities." *Miami Twp. Bd. of Trustees v. Weinle*, 2021-Ohio-2284, 174 N.E.3d 1270, ¶ 47, 50 (1st Dist.), citing *Bracket v. Moler Raceway Park, LLC.*, 195 Ohio App.3d 372, 2011-Ohio-4469, 960 N.E.2d 484, ¶ 16 (12th Dist.), and *Myers v. Wild Wilderness Raceway, L.L.C.*, 181 Ohio App.3d 221, 2009-Ohio-874, 908 N.E.2d 950, ¶ 28 (4th Dist.). Still, "[w]e * * * review legal issues decided within the injunction framework under a de novo standard." *City of Cincinnati Citizen Complaint Auth.*, 2019-Ohio-5349, 139 N.E.3d 947, at ¶ 21, citing *Vontz*, 2016-Ohio-8477, 111 N.E.3d 452, at ¶ 26.

**{¶33}** We first address CMC 915-3, which operates in three stages. First, CMC 915-3(a) renders it a crime for a person who is in control of a child, such as a parent,

to "create a substantial risk to the health or safety" of the child. Second, CMC 915-3(b) declares, "It shall be a substantial risk to the health or safety of a child for a person * * * to negligently store or leave a firearm in a manner or location in the person's residence or vehicle where the person knows or reasonably should know a child is able to gain access to the firearm." Third, CMC 915-3(c) dictates that "[t]his section does not apply to a person who" keeps or stores a firearm in "safe storage" in their residence or vehicle or in a situation where "a child gains access to the firearm as a result of any other person's unlawful entry into a person's residence or vehicle." CMC 915-1-S defines "safe storage" to include trigger locks, safes, or other devices that can only be unlocked by "a key, a combination, or other similar means."

{¶34} R.C. 9.68(A) declares:

Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, including by any ordinance, rule, regulation, resolution, practice, or other action or any threat of citation, prosecution, or other legal process, may own, possess, purchase, acquire, transport, *store*, carry, sell, transfer, manufacture, or *keep* any firearm * * *. Any such further license, permission, *restriction*, delay, or process interferes with the fundamental individual right described in this division and unduly inhibits law-abiding people from protecting themselves, their families, and others from intruders and attackers and from other legitimate uses of constitutionally protected arms, including hunting and sporting activities, and the state by this

20

section preempts, supersedes, and *declares null and void* any such

further license, permission, restriction, delay, or process.

(Emphasis added.) R.C. 9.68(A).

{¶35} The preemptive language of R.C. 9.68(A) sweeps broadly, nullifying any local government restrictions, processes, etc. that are not "specifically provided by" federal or state law. Ultimately, for the reasons explained below, we conclude that R.C. 9.68 preempts and nullifies only CMC 915-3(b). We therefore determine that Mr. West was entitled to declaratory and injunctive relief enjoining the City from enforcing CMC 915-3(b) against him. *See ProgressOhio.org, Inc.*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, at ¶ 19; *Stoneham*, 140 Ohio App.3d at 267-268, 747 N.E.2d 268.

{¶36} The City correctly observes that CMC 915-3(a) essentially mirrors the state's child endangerment statute, R.C. 2919.22(A), which reads, in part, "No person [having custody or control of a child] shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Neither the City ordinance nor the state statute include a mens rea, and both prohibit the same conduct by the same standard. Additionally, CMC 915-3(a) does not mention or relate to firearms in any way, and thus does not independently conflict with R.C. 9.68.

{¶37} CMC 915-3(b), however, regulates the negligent storage and keeping of firearms in a way not specifically provided for by state or federal law, and the City's argument that CMC 915-3(b) merely codifies Ohio case law defining what constitutes a "substantial risk" to children misses the mark. In the cases the City cites for that proposition, courts engage in a fact-specific analysis to determine whether the defendant's behavior constituted a "substantial risk" under R.C. 2919.22(A). *See, e.g.*,

*State v. Wyatt*, 9th Dist. Summit No. 22070, 2004-Ohio-6546, ¶ 27 (holding the defendant "clearly" created a substantial risk by leaving "a loaded, semiautomatic gun on the floor of a bedroom easily accessible to" minor children); *State v. Howard*, 7th Dist. Mahoning No. 06-MA-31, 2007-Ohio-3170, ¶ 87 (holding that evidence that a defendant "left a loaded, cocked, ready-to-be-fired handgun under a bed in the house where his [minor] sons had access to it was competent evidence on which the jury could have found him guilty of child endangering"). Rather than demonstrating parity between state law and CMC 915-3(b), these cases illustrate how the City's ordinance goes *further* than state law by defining "substantial risk" to *specifically* encompass the negligent storage of firearms. Put another way, a factfinder assessing whether Mr. West violated CMC 915-3(a) would have to assess whether he negligently stored or kept his firearms under CMC 915-3(b), rather than simply determining whether he created a substantial risk to the children. The City points to no place in federal or state law where "substantial risk" is so specifically defined with regard to firearms. By so regulating, the City enacted exactly what R.C. 9.68(A) proscribes: a local ordinance that restricts the storage and keeping of firearms in a manner that state and federal law does not.

{¶38} The same is not true, however, with respect to CMC 915-3(c). Rather than a restriction on firearms storage, CMC 915-3(c) establishes exemptions to criminal liability under CMC 915-3(a) by declaring that the law "does not apply" to those who engage in safe storage, CMC 915-3(c)(1), or in situations where a child gains access to a firearm only due to the unlawful entry of another, CMC 915-3(c)(2). In such situations, the burden rests on the accused to establish that the exemption applied to them. *See State v. Meyers*, 11th Dist. Lake Nos. 2013-L-042 and 2013-L-

22

043, 2014-Ohio-1357, ¶ 41-43, citing *State v. Washington*, 1st Dist. Hamilton No. C-810917, 1982 Ohio App. LEXIS 12701, 3 (Oct. 27, 1982), and *State v. Frost*, 57 Ohio St.2d 121, 128, 387 N.E.2d 235 (1979). Though this subsection still *relates to* firearm storage, it does not impose a "further restriction" (nor a license, permission, delay, or process) on firearm storage because it merely provides an avenue for a person accused of violating CMC 915-3(a) to prove an exemption from criminal liability under that law. In other words, CMC 915-3(c) allows for someone accused of violating the City's child endangerment law, which the parties seemingly agree can encompass situations relating to firearms regardless of the status of CMC 915-3(b), to avoid liability by showing that they engaged in "safe storage" or that the child gained access to the firearm because of another person's unlawful entry into their home or vehicle. CMC 915-3(c); *see Wyatt* and *Howard* (upholding convictions for child endangerment under state law due to the defendants' firearm-related conduct). It cannot be said that by providing these "carrots," as the City calls them, CMC 915-3(c) somehow infringes on the affirmative right to store firearms as described in R.C. 9.68(A). We therefore conclude that no conflict exists between CMC-915-3(c) and R.C. 9.68(A).

{¶39} In sum, by specifically establishing that the negligent storage of firearms constitutes a "substantial risk" to children in a way state and federal law do not, CMC 915-3(b) is preempted and nullified by R.C. 9.68(A). However, CMC 915-3(a), which substantially aligns with the state's child endangerment statute and does not independently relate to firearms in any way, and CMC 915-3(c), which merely provides exemptions to criminal liability under CMC 915-3(a), are not preempted by R.C. 9.68. Additionally, we see no conflict concerning CMC 915-3(d) through (g), which address the penalty for violating CMC 915-3, clarify that the section does not prohibit personal

23

carry and control of a firearm, specify that unlawfully furnishing a firearm to a child is a different crime that would be prosecuted under state law, and provide for seizure and forfeiture of "[a]ny instrumentality" used in violation of the section. CMC 915-3(d) to (g). Nor does Mr. West identify any specific infirmity in those subsections.

{¶40} Turning to the rest of the ordinance, we conclude that the court erred in enjoining sections of CMC 915 outside of CMC 915-3 on two grounds. First, because Mr. West was only charged with violating CMC 915-3, he lacked standing to challenge unrelated parts of the ordinance. Second, even if he had standing to challenge the full ordinance, the definitions contained in CMC 915-1, in and of themselves, do not impose any regulations or other restrictions on firearms and thus are not preempted by R.C. 9.68. And Mr. West conceded at oral argument that the trial court should not have enjoined CMC 915-5 because it does not conflict with the state's weapons under disability regulation, R.C. 2923.13. Therefore, the trial court erred in concluding, to the extent that it did so conclude, that enjoining CMC 915-1 and CMC 915-5 was "necessary to prevent irreparable harm" to Mr. West, and we thus modify the injunction to exclude CMC 915-1 and CMC 915-5. *See Stoneham*, 140 Ohio App.3d at 267-268, 747 N.E.2d 268. Accordingly, we sustain in part the City's third assignment of error challenging the injunction order as overbroad and modify the order to enjoin only CMC 915-3(b). *See Weinle*, 2021-Ohio-2284, 174 N.E.3d 1270, at ¶ 58. We otherwise overrule the third assignment of error.

* * *

{¶41} We thus affirm the trial court's order granting Mr. West a declaratory judgment that CMC 915-3(b) is null and void because it is preempted by R.C. 9.68(A) and affirm the court's order permanently enjoining the City from enforcing that

24

subsection. We reverse the trial court's order granting declaratory and injunctive relief regarding all other parts of CMC 915, including CMC 915-1, CMC 915-3(a) and (c) through (g), and CMC 915-5, and modify the injunction to exclude those sections and subsections. The City's first, second, and fourth assignments of error are overruled, and its third assignment of error is sustained in part and overruled in part. We lift the stay that we previously granted, and we remand this cause for further proceedings consistent with this opinion, including for a determination of the extent to which Mr. West still "prevails" in his challenge regarding CMC 915 for the purposes of R.C. 9.68(B) given the modifications to the injunction ordered in this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.